Richmond Young, by his next friend, J. O. Griffith, plaintiff, against Zephaniah Young, Jr., Seth Young, B. S. Young and William Hutchins, defendants. The complaint states:
1. That Seth Young, some time in 1856, in order to advance B. S. Young, his son, permitted him to have and to hold a certain tract of land in Yancey county (describing it), and he sold said land, with the consent and approval of his father, to defendant William Hutchins; and Seth Young then and there delivered the grants and mesne conveyances which constituted the chain of title, to Hutchins, and also agreed by parol to convey the land to him, to obviate the necessity of making a deed to his son, and Hutchins paid the purchase-money to B. S. Young, the son, with the consent and approval of the father. That afterwards, in the year 1857, one Josiah Young intermarried with Ann Young, a daughter of Seth Young, and at request of his father-in-law, bought said land of Hutchins, agreeing by parol to pay him $225, the said Seth then and there also agreeing by parol to convey to Josiah upon payment of the purchase-money; that Josiah paid Hutchins the money according to agreement, and Hutchins delivered to him (93) the said grants and mesne conveyances, and he took possession of the land, and died before any conveyance was executed to him by Seth Young, leaving him surviving the plaintiff, Richmond Young, his only heir-at-law, a minor without guardian, and his window, Ann Young, who returned to her father's and lived there for some years, during which time Seth Young took control of the land and enjoyed the rents and profits of the same; and, by some means unknown to the plaintiff, the said Seth and B. S. Young obtained possession of the grants and conveyances aforesaid.
2. That afterwards Seth Young, in fraud of the plaintiff's rights, and in violation of his parol agreement, entered into a conspiracy, as *Page 80 
hereinafter alleged, and conveyed the land to Zephaniah Young, who purchased, or pretended to purchase, the same, with full knowledge of plaintiff's rights and equity.
3. That afterwards the defendants, the Young's, wilfully and unlawfully, did agree together to defraud the plaintiff out of his land, having obtained the grants and title papers as aforesaid; and in pursuance of such unlawful conspiracy, the said Seth conveyed the land to Zephaniah, to the great damage of the plaintiff, to-wit, to the amount of two thousand dollars.
4. That they now refuse to convey to plaintiff, and they and William Hutchins refuse to pay plaintiff the sum of $225, with interest; that Zephaniah is in possession of the land and refuses to surrender the same to plaintiff, and unlawfully withholds it, to the plaintiff's damage one thousand dollars.
Therefore, the plaintiff demands judgment:
1. For a decree declaring Zephaniah Young, Jr., a trustee for plaintiff's benefit, and that he be compelled to convey the land to plaintiff, and for a thousand dollars damages.
2. For a decree that the defendants shall pay to the plaintiff (94) the sum of $225, with interest, and that this sum be declared a lien on the land, and in default of payment at such time as the Court may fix, then a writ of possession to issue to put the plaintiff in possession, there to remain until by the rents and profits of the land he shall be paid said sum and interest.
3. For such other and further relief as the case may demand, and for costs of action.
The defendants demurred to the complaint, for that it appeared upon its face:
1. That several causes of action have been improperly joined, one being to declare the defendant Zephaniah a trustee, a second being a money demand against William Hutchins and the other defendants for $225 and interest, and a third for the recovery of real property, with damages for withholding the same.
2. That the plaintiff has not the legal capacity to sue for said sum of money, the personal representative of said Josiah Young being the proper party plaintiff to sue for the same.
3. That the complaint does not state facts sufficient to constitute a cause of action, because there was no memorandum in writing, signed by the defendants, or either of them, of the pretended agreement or contract to convey said land, but that the same was in parol and void under the statute of frauds.
The Court overruled the demurrer, and gave judgment that defendants answer over, from which ruling they appealed. *Page 81 
The complaint in this case unites two causes of action: first, that Zephaniah Young should be declared a trustee of the land described in the complaint, for the benefit of the plaintiff, (95) and that he be compelled to convey the same to him, and for damages; second, that Zephaniah Young, Seth Young, B. S. Young and William Hutchins are indebted to him for the purchase-money of the land in controversy, with interest, for which they are liable by reason of a conspiracy between them to cheat and defraud the plaintiff out of the land.
The defendants demurred to the complaint, and set forth in their demurrer three grounds of objection thereto:
First. — That several causes of action have been improperly joined, to-wit: 1. To declare Zephaniah Young, one of the defendants, a trustee of the lands mentioned in the complaint, for the plaintiff, and to compel him to convey to him the said land. 2. That defendants, William Hutchins, B. S. Seth and Zephaniah Young, are indebted to him in the sum of two hundred and twenty-five dollars, with interest. 3. That he seeks to recover real property, the land mentioned in the complaint.
Second. — That plaintiff has not the legal capacity to sue, for that the action should have been brought in the name of the executor or administrator of Josiah Young.
Third. — That the complaint does not state facts sufficient to constitute a cause of action, because the contract to convey the land was not reduced to writing, and was void under the statute of frauds.
The demurrer was overruled by the Court, and the defendants appealed to this Court.
While it was the object of the Legislature, by adopting C. C. P. 126, to avoid a multiplicity of suits and prevent protracted and vexatious litigation, the first sub-division of the section has given rise to more unprofitable litigation and fine-spun disquisitions upon its construction, than any other section, not excepting Section 343. In this State it was decided in Land Co. v. Beatty, 69 N.C. 329, that a cause of action in contract against one of two defendants could not be joined with a cause of action on the fraud of both; but Judge RODMAN, (96) who delivered the opinion, of the Court, felt constrained to say that "it is difficult to give any exact meaning to that clause." And the late Chief Justice of the Court (PEARSON), in the case of Hamlin v. Tucker,72 N.C. 502, referring to this clause, said: "The purpose being to extend the right of plaintiffs to join actions, not merely by including equitable as well as legal causes of action, but to make the ground broad *Page 82 
enough to cover all causes of action which a plaintiff may have against a defendant, arising out of the same subject of action, so that the Court may not be forced to take `two bites at a cherry,' but may dispose of the whole subject of controversy and its incidents and corollaries in one action."
Unfortunately, it was this very purpose to obviate the necessity of forcing the Courts to take "two bites at a cherry" that has been thefruitful source of all the uncertain and unsatisfactory constructions of the clause, all of which might have been avoided and an easy solution of the difficulty attained if they could have anticipated and adopted the suggestion of the Chief Justice in his opinion above referred to, which is, "Should the action become so complicated and confused as to embarrass the Court in its investigation, the remedy furnished is, that the Court may, exmero motu, refused to pass upon matter not germane to the principal subject of action." But it will be borne in mind that this is only a dictum of the learned Judge.
In New York, the birthplace of The Code, Judge SUTHERLAND, inAdams v. Bissell, 28 Barb., 382, which was the case of a demurrer for a misjoinder of causes of action, under a similar section of The Code, in concluding his opinion, said: "Upon the whole, I have come to the conclusion that the plaintiff had the right to unite the two causes of action in the complaint; but I have done so, knowing that no (97) reasoning on this point can have much logical precision, or lead to a satisfactory result." And Mr. Pomeroy, in his tratise on Remedies and Remedial Rights, criticises the opinion and says the Judge is "afloat as to the legal import of the subject of action." And we think he might truly have added that not a few other Judges and commentators are "afloat" upon the legal import of "the same transaction," "transactions connected with the same subject of action," "the object of the action," and "causes of action," and the nice and refined distinctions between them. So many and such diverse analyses of this sub-division of the section have been made by the Courts in those States which enjoy the blessings of the code system, that they have made "confusion worse confounded," to such an extent that Mr. Pomeroy, in his work above referred to, after citing a number of decisions and quoting copiously from them, is compelled to admit "that little help can be obtained from the foregoing judicial explanations." And so complex, uncertain and defiant of logic has the subject proved, that the Courts have failed to derive any said aid from even the "reason of the thing," that dernier resort of some Judges when all other resources have failed.
Before this section of The Code was adopted, the doctrine of multifariousness was generally understood by the profession, and as The Code has in the main conformed to the equity practice, it may be well *Page 83 
to look to those old landmarks for a guide through the mist that envelopes this subject.
We find it held that if the grounds be not entirely distinct and unconnected; if they arise out of one and the same transaction or series of transactions, forming one course of dealing, and all tending to one end; if one connected story can be told of the whole, the objection of multifariousness does not arise. Story Eq. Pl., Sec. 271; Bedsole v.Monroe, 40 N.C. 313. And if the objects of the suit are single, and it happens that different persons have separate interests, in distinct questions which arise out of the single object, it necessarily follows (98) that such different persons must be brought before the Court in order that the suit may conclude the whole subject. Salvidge v. Hyde, 5 Mad. Ch. Rep., 138. The same doctrine was laid down by Chancellor WALWORTH in the case of Boyd v. Hoyt, 5 Paige, 78. And in the case ofWhaley v. Dawson, 2 Sch. Lef., 370, it was held that in English cases when demurrers, because the plaintiff demanded in his bill matters of distinct natures against several defendants not connected in interest have been overruled, there has been a general right in the plaintiff covering the whole case, although the rights of the defendants may have been distinct; and so it was held in the case of Dimmock v. Vixby, 20 Pick., 368, that where one general right is claimed by the plaintiff, although the defendants may have distinct and separate rights, the bill of complaint is not multifarious. All of these cases were decided upon the principle of preventing a multiplicity of suits, which was the object of the "clause" under consideration.
Applying the principles enunciated in the cases cited to our case, we are of the opinion the causes of action in the complaint were properly united, and the first ground of objection taken by the demurrer can not be sustained.
The second ground is also untenable. The action is rightfully brought by the plaintiff as heir of Josiah Young. The purchase-money paid upon an agreement for the sale of land is in equity considered as land, and if the contract is vacated after the death of the vendee, it goes to the heir.Tate v. Conner, 17 N.C. 224.
But the third ground of objection must be sustained, because it appears upon the face of the complaint that the contract for the purchase of the land was not reduced to writing, and is void under the statute of frauds. This, however, does not affect the plaintiff's right of action, only pro tanto, and he may prosecute his action against (99) the defendants, or such of them as he may be advised to proceed against. If it should be found there are too many defendants joined in the action, the joinder of the unnecessary parties may be treated as *Page 84 
surplusage, and the plaintiff may proceed against the real defendants.Green v. Green, 69 N.C. 294; Rowland v. Gardner, Ibid., 53.
While we have sustained the third ground of demurrer, we would suggest, without meaning to intimate an opinion, that it may be worthy of consideration whether Seth Young, having the title, by advising and encouraging Josiah Young to expend his money for the land, and Hutchins to sell him his interest in it, is not concluded by an equitable estoppel from denying the title of Josiah Young; and whether Zephaniah, who purchased from Seth with full notice of all the facts and equities, is not also estopped.
Reversed.
Cited: Bank v. Harris, 84 N.C. 212; Syme v. Bunting, 86 N.C. 178;England v. Garner, Id., 370; King v. Farmer, 88 N.C. 27; Heggie v. Hill,95 N.C. 306; Holler v. Richards, 102 N.C. 549; Vann v. Newsom, 110 N.C. 125;Outland v. Outland, 113 N.C. 75; Pretzfelder v. Ins. Co., 116 N.C. 496;Benton v. Collins, 118 N.C. 198; Daniels v. Fowler, 120 N.C. 16;McCall v. Zachary, 131 N.C. 469; Fisher v. Trust Co., 138 N.C. 234,243; Oyster v. Mining Co., 140 N.C. 137; Ricks v. Wilson, 151 N.C. 49;Quarry Co. v. Construction Co., Ib., 350; Worth v. Trust Co., 152 N.C. 244;Chemical Co. v. Floyd, 158 N.C. 462.
Dist: Loughran v. Giles, 110 N.C. 427, 428.