FISHER v. TRUST CO.

(Filed May 2, 1905.)

*Pleadings—Joinder of Causes of Action and Parties— Demurrer.*

1. A complaint which alleges that one of the defendants, W. conceived the design of defrauding plaintiff's intestate out of his property, and continuously pursued that design through a series of transactions from 1889 till intestate's death in 1903, the steps taken by W. to so defraud intestate being alleged and the fraudulent connection with him of all those who allowed W. to involve them in his scheme being stated and such persons so participating being made co-defendants and asked to surrender so much of intestate's property as they fraudulently received either for their own benefit and for that of W., *held,* that a demurrer for misjoinder of causes of action and of parties was properly overruled.

CONNOR and WALKER, JJ., dissenting.

FISHER v. TRUST CO.

2. If the grounds of the complaint arise out of one and the same trans-
     action, or a series of transactions forming one course of dealing
     and all tending to one end; if one connected story can be told
     of the whole, it is not multifarious.

ACTION by Isabella Fisher, administratrix of B. J. Fisher,
and others, heirs at law of B. J. Fisher, against Southern
Loan and Trust Company and others, heard by *Judge T. J.
Shaw* at the February Term, 1905, of the Superior Court of
GUILFORD County. From a judgment overruling the de-
murrer, the defendants appealed.

*Brooks & Thomson, King & Kimball* and *E. J. Justice*
for the plaintiffs.
*W. P. Bynum, Jr., Scales, Taylor & Scales* and *Pou & Ful-
ler* for the defendants.

CLARK, C. J. The defendants demurred for misjoinder of
causes of action and for misjoinder of parties and appealed
from a judgment overruling a demurrer.

Upon examination of the complaint, it differs somewhat
from the recitals in the demurrer, and the first question is
what are the matters set forth as the plaintiffs' cause of
action. *Parish v. Sloan,* 38 N. C., 610. They are in sub-
stance that in 1888 the defendant E. P. Wharton met B. J.
Fisher, an Englishman who had not been long in this coun-
try; that Fisher was not a practical man and was of a con-
vivial turn; that Wharton conceived the design of cheating
and defrauding Fisher out of his property and continuously
pursued that design through a series of transactions from
1889 till the death of Fisher in 1903; the numerous steps tak-
en by Wharton to cheat and defraud Fisher out of his prop-
erty are alleged in the complaint, and the fraudulent con-
nection with him of all those who allowed Wharton to in-
volve them in his scheme, is stated, and such persons so par-

ticipating are made parties to the action, and they are asked to surrender so much of Fisher's property as they fraudulently received either for their own benefit or for that of Wharton. Wharton, it is alleged, acted in person in this matter throughout, and also through the Southern Loan & Trust Company (formerly the Wharton-Worth Real Estate Co.) a corporation under his control, and which was by his influence made Fisher's agent and representative with him. The steps taken to effect his purpose to cheat and defraud Fisher of his property, as alleged in the complaint, were, (a) that as agent for Fisher he sold the property in Greensboro known as the Benbow Hotel to a corporation in which he was interested for less than its value, and immediately sold his interest at a profit of one thousand dollars; (b) that Wharton caused the Southern Loan & Trust Company to lend to Fisher $8,600 when the latter was in financial distress and great need of money, with the view of acquiring the additional influence of a creditor over him; (c) that he took advantage of the fact that Fisher needed and was forced to have a large sum of money, and of the fact that Fisher had confidence in him as his trusted and confidential agent, and procured a contract by which the Southern Loan and Trust Company was to be the exclusive agent of B. J. Fisher, and sell all of Fisher's land at the unusual commission of 33 1-3 per cent., and that Fisher could not sell his property save through this company; (d) that he caused the Southern Loan and Trust Company to lend Fisher $36,000.00 which he was in great need of, with the purpose of tightening his coils about him; and, in addition to the exclusive right of sale of Fisher's property, further encumbered this property, which was worth from $150,000.00 to $200,000.00, by a deed of trust for $36,000.00; (e) that he falsely represented to Fisher that the Southern Loan and Trust lot and building were worth $60,000.00, when they were not in fact worth over $30,000.00; that it was a paying investment, and that

the prospects of its greatly increasing in value were good, and that he could and would sell the property for $75,000.00, when he knew all this to be untrue; and that by reason of his influence over him on account of the fact that he was Fisher's agent and trusted by him, and by his influence over him as a creditor, and by these false representations, he procured Fisher to enter into a pretended contract to purchase the Southern Loan and Trust building and lot, and Fisher understood, and Wharton knew he had caused him to understand, that it was not a purchase, but that Fisher was taking the title to the property, and was to execute his note for $60,000.00, with the understanding that the note should not be paid until the property was sold by the Southern Loan and Trust Company for $75,000.00, and that in the mean· time the note of $60,000.00 should draw interest at 4½ per cent., and the Southern Loan and Trust Company should guarantee that $2,700.00, the amount of the interest on the said note, should be paid to Fisher as a net income from the building; and that, in order to perpetrate this fraud; Wharton and the Southern Loan and Trust Company bribed Fisher's attorney by paying him $200.00 to deceive his client, and thereby procured him to advise his client that the contract with regard to the sale of the Southern Loan and Trust building, which is attached as Exhibit "A" to the complaint, accomplished what it was understood between Wharton and Fisher should be accomplished, when it was well known to Wharton and the Southern Loan and Trust Company and Fisher's attorney, but was not known to Fisher, that it did not carry into effect the real contract as Fisher understood it, and as Wharton and the Southern Loan and Trust Company had represented it; (f) that with a view of placing Fisher's property out of his hands, and defrauding him of it, so that it could not be reached by him, Wharton and the Southern Loan and Trust Company sold to certain insurance companies, of which Wharton was the vice-president and one

of the active managers, and of which the other officers of the Southern Loan and Trust Company were also active managers, Fisher's property for much less than its real value, with the full acknowledge by the grantees of the fraud being practiced, thereby violating the duties which Wharton and the Southern Loan and Trust Company owed to Fisher, thus taking advantage of Fisher's confidence in them as his agents, and using their position as creditors to coerce him; (g) that Wharton and the Southern Loan and Trust Company, by taking advantage of this same situation, and by the same breach of faith, by fraud, and by coercion when it became necessary, caused renewals of the deeds of trust to be made from time to time; and by means of the same fraud and, during the latter years of Fisher's life, more often by coercing him as their debtor, caused Fisher to execute papers, renewal notes, and renewal deeds of trust to the Southern Loan and Trust Company, and finally to one of the defendant insurance companies, it having full knowledge of the fraud which had been practiced on Fisher from the beginning, and the fraudulent purpose of the Southern Loan and Trust Company and Wharton in having the renewal deeds of trust executed for the benefit of the said insurance company.

The alleged fraud and improper conduct of Wharton and the Southern Loan and Trust Company, and his dealings with Fisher and the other defendants with the design of cheating Fisher out of his property, which purpose, it is charged, was finally accomplished, is all told in the complaint as a connected story. If the fountain is tainted, so, likewise, is the water that flows from it into all the streams. Whereever Wharton placed Fisher's property, which he wrested from him by fraud and corruption, Fisher's widow and children can go and compel those having it, with knowledge of the fraud, to surrender it to them.

As to the alleged misjoinder of causes of action, there are many precedents overruling the demurrer on this ground, in

cases like this, where the objection made was that separate and distinct causes of action were stated in the complaint. Among them is *Bedsole v. Monroe,* 40 N. C., 313. In that case Elizabeth Ryals made her will, bequeathing and devising certain property to various people, and among other things giving to her brother, Duncan Bedsole, and a friend, Malcomb Monroe, a negro woman named Dinah, certain other slaves and certain land, and making Monroe and Bedsole the beneficiaries of a residuary clause, and appointing them executors. Upon the death of the testatrix the will was probated by the executors. The bill was filed in 1848 and states that the plaintiff was ignorant and unlearned, and that the defendant was a shrewd business man and it was agreed that the defendant should manage the estate, and that he took into his possession all the property but failed to return an inventory, and that the defendant practiced "upon the ignorance of your orator, through fraud and misrepresentation induced your orator to make to the defendant a conveyance of all his interest in the said land," specifically devised, about June, 1847, the defendant representing that to be the will of the testatrix, and that this was false. The bill further states that the residue of the estate was considerable and that the defendant had failed to pay off the pecuniary legacies. The bill seeks to set aside the deed as fraudulent and have an accounting of the personal estate, and require all legacies to be paid and the residue to be divided between the plaintiff and defendant, and that the negroes should be divided.

*Ruffin, C. J.,* delivering the opinion which held that the principle against misjoinder of causes of action cannot apply under certain circumstances, said: "It is obvious that the principle cannot apply when two things concur. First, when the different grounds of suit are wholly distinct, and, Second, when each ground would, as stated, sustain a bill. If the grounds of the bill be not entirely distinct and wholly unconnected; if they arise out of one and the same transac-

tion or series of transactions, forming one course of dealing, and tending to one end; if one connected story can be told of the whole, then the objection cannot apply." The court held that the objection of the defendant there was not valid.

In *Hamlin v. Tucker,* 72 N. C., 502, the court held that the plaintiff could maintain an action for (1) the harboring and maintaining of his wife; (2) the conversion of certain personal property to which he was entitled *jure mariti;* (3) inducing his wife, while harbored and maintained, to execute to the defendant a deed for land, under which he had received the rents; (4) for converting to the defendant's own use certain mules, farming utensils, etc., set out in the marriage settlement executed by the plaintiff and his wife. The court held, *Pearson, C. J.* delivering the opinion, that there was not a misjoinder of causes of action and that the case was covered by C. C. P. Section 126, which is now Section 267 of the Code, and said: "In our opinion the case is embraced by C. C. P. Section 126. The plaintiff may unite in the same complaint several causes of action whether they be such as may have heretofore been denominated legal or equitable, or both, when they all arise out of the same transaction, or transactions connected with the same subject of action, the purpose being to extend the right of the plaintiff to join actions, not merely by including equitable as well as legal causes of action, but to make the ground broad enough to cover all causes of action which a plaintiff may have against a defendant, arising out of the same *subject* of action, so that the Court may not be forced 'to take two bites at a cherry,' but may dispose of the whole subject of controversy and its incidents and corrollaries in one action. Should the action become so complicated and confused as to embarrass the Court in its investigation, the remedy furnished is, that the Court may *ex mero motu* refuse to pass upon matter not germane to the principal subject of action."

The same principles apply in cases where there are more

than one defendant, as will be seen from the authorities which follow; and, in discussing the question as to whether there is a misjoinder of parties, the cases cited below are also authorities against the proposition that there is a misjoinder of causes of action, as will be seen from the quotations. In . *Gaines v. Chew*, 2 How. (U. S.) 619, a bill was filed against the executors of an estate and all those who purchased from them, and the Court held that the demurrer for multifariousness should be overruled. *Mr. Justice McLean*, in delivering the opinion of the Court, said:

"The complainants have made defendants, the executors named in the will of 1811, and all who have come to the possession of property, real and personal, by purchase or otherwise, which belonged to Daniel Clark at the time of his death. That a bill which is multifarious may be demurred to for that cause, is a general principle; but what shall constitute multifariousness is a matter about which there is a great diversity of opinion. In general terms, a bill is said to be multifarious which seeks to enforce against different individuals demands which are wholly disconnected. In illustration of this, it is said, if an estate be sold in lots to different persons, the purchasers could not join in exhibiting one bill against the vendor for a specific performance."

After citing authorities, and quoting from them, the Court proceeds:

"The bill prays that the defendants, Relf and Chew, may be decreed to account for moneys, etc., which came into their hands, as executors under the will of 1811; and that the other defendants who purchased from them real and personal property, may be compelled to surrender the same, and account, etc., on the ground that they had notice of the fraud of the executors."

Further on, the Court, in speaking of the defendants, says: "They have a common source of title, but no common interest in their purchases. And the question arises, on this

state of facts, whether there is misjoinder or multifarious-ness in the bill, which makes the defendants parties."

Further on the Court says: "There can be no doubt that a bill might have been filed against each of the defendants, but the question is whether they may not all be included in the same bill."

"The facts of the purchase, including notice, may be peculiar to each defendant; but these may be ascertained without inconvenience or expense to the co-defendants. In every fact which goes to impair or establish the authority of the executors, all the defendants are alike interested. In its present form the bill avoids multiplicity of suits, without subjecting the defendants to inconvenience or unreasonable expense."

The Court holds that there is not a misjoinder of causes of action, as the defendants claim under a common source, under the will referred to. The Court held that one defendant's claim under a different source was not properly joined, and ordered an amendment of the bill in that respect.

In *Oliver, et al. v. Piatt,* 3 How. (U. S.) 333, *Mr. Justice Story* delivering the opinion of the Court, used this language: "We are of the opinion that the bill is in no just sense multifarious. It is true that it embraces the claims of both the Companies; but their interests are so mixed up in all these transactions that entire justice could scarcely be done, at least conveniently done, without a union of the proprietors of both Companies; and if they had not been joined, the bill would have been open to the opposite objection that all the proper parties were not before the Court, so as to enable it to make a final and conclusive decree touching all their interests, several as well as joint."

In *Parish v. Sloan,* 38 N. C., 610, the plaintiff filed a bill alleging that Dixon Sloan, one of the defendants, was indebted and executions were issued against him, and certain negroes were sold, and some of them were bought by the de-

fendant Faison, and the remainder by Daniel C. Moore; and
on the same day Dixon Sloan sold other slaves to Faison
upon the agreement that Faison should convey the negroes
purchased at the sheriff's sale to David D. Sloan, in trust
for the wife of Dixon Sloan, during her life, and after her
death to her children, the other defendants. It was alleged
this transfer was made in fraud of creditors, etc. It was
further alleged that John C. Moore was security for Dixon,
and held a mortgage from Sloan on several negroes to secure
him, and that later Dixon Sloan mortgaged to John C. Moore
other negroes to secure another creditor. It is then alleged
that all the debts secured by the mortgage were paid by sale
of some of the negroes conveyed to John C. Moore. The
bill prays that the debts due plaintiff be paid out of the
negroes mortgaged to John C. Moore, and if they are not suffi-
cient, then out of the negroes conveyed to David D. Sloan in
trust for Mrs. Dixon and children.

There was a demurrer filed to this bill upon the ground
that it was multifarious, in that the slaves sold by Faison,
sheriff, are in no way connected with the mortgage of the
slaves to Moore. *Nash, J.,* overruling the demurrer, says:
"But when one general right is claimed by the plaintiff,
though the individuals made defendants have separate and
distinct rights, yet they may all be charged in the same bill,
and a demurrer for that cause can not be sustained."

*Glenn v. Bank,* 72 N. C., 626, was an action against an
insolvent bank and the stockholders therein, and also against
certain trustees. A demurrer was filed, upon the grounds
that it was sought (1) to recover against the bank on notes;
(2) to set aside a deed in trust, alleged to have been made by
the bank to certain trustees; (3) to recover against certain
stockholders, upon the ground that the bank was insolvent;
and that each of said causes of action was a separate and dis-
tinct one. *Pearson C. J.,* in delivering the opinion, says:
"We incline to the opinion that the very liberal mode of pro-

cedure adopted by C. C. P., in the sections referred to in the plaintiff's brief, meets the difficulties raised by the demurrer; and without deciding the points definitely, but allowing the defendants to have the benefit thereof at the trial, in analogy to the equity practice, by which the plea is overruled, but 'the equity is reserved until the hearing,' we have come to the conclusion that there was no error in the judgment of His Honor, by which the demurrer is overruled, and the defendants are required to answer."

In *Young v. Young,* 81 N. C., 91, it was alleged in the complaint that Seth Young, in 1856, permitted B. S. Young, his son, to take certain land as an advancement; and the latter sold it, with the approval of his father, to William Hutchins; and the former delivered his chain of title to the purchaser, and agreed to convey the land directly to him, and the purchase money was to be paid to B. S. Young, the son, with the consent of the father. Subsequently Ann Young, a daughter of Seth Young, married Josiah Young, who agreed to purchase said land from Hutchins for $225.-00; and the said Seth Young agreed by parole to convey the land to Josiah Young when the purchase money was paid; that Josiah Young paid Hutchins the money, and the latter delivered to the former the grants and *mesne* conveyances, and Josiah Young took possession of the land, but died before Seth Young, leaving surviving the plaintiff, Richmond Young, his only heir-at-law, and his widow, Ann Young, who returned to her father, Seth Young, who took possession of the lands and obtained possession of the grants and deeds aforesaid; that afterwards Seth Young, in violation of his parole agreement, and in fraud of the plaintiff's rights, conveyed the land to Zephaniah Young, who pretended to purchase the same, but did so with knowledge of the facts alleged; that the defendants Zephaniah Young and Seth Young fraudulently refused to convey the land, to plaintiff's great damage, to wit: $2,000.00; and that they and Hutchins re-

fused to pay the plaintiff the sum of $225.00, the price paid for the land by Josiah Young, the plaintiff's father, and interest; that the defendant Zephaniah Young wrongfully withholds the possession of the land from the plaintiff to his damage in the sum of $1,000.00. The prayer asked is (1) that Zephaniah Young be declared a trustee for the plaintiff's benefit, and compelled to convey the land to him, and for $1,000.00 damages; (2) for a decree that the defendants shall pay the plaintiffs the sum of $225.00 and interest.

There was a demurrer, because several causes of action were improperly joined; the one being to declare Zephaniah a trustee, and another a money demand against Hutchins and others for the $225.00 and interest; and a third for the recovery of real property, with damages for withholding it.

The Supreme Court, through *Ashe, J.,* said, overruling the demurrer:

"We find it held that if the grounds be not entirely distinct and unconnected; if they arise out of one and the same transaction, or series of transactions, forming one course of dealings, and all tending to one end; if one connected story can be told of the whole; the objection of multifariousness does not arise. Story Eq. Pl., Sec. 271; *Bedsole v. Monroe,* 40 N. C., 313. And if the objects of the suit are single, and it happens that different persons have separate interests, in distinct questions which arise out of the single object, it necessarily follows that such different persons must be brought before the Court, in order that the suit may conclude the whole subject. *Salvidge v. Hyde,* 5 Mad. Ch. 138. The same doctrine was laid down by *Chancellor Walworth* in the case of *Boyd v. Hoyt,* 5 Paige, 78. And in the case of *Whaley v. Dawson,* 2 Sch. & Lef., 370, it was held that in English cases, demurrers, because the plaintiff demanded in his bill matters of distinct nature against several defendants not connected in interest, have been overruled, where there has been a general right in the plaintiff covering the

whole case, although the rights of the defendants may have been distinct; and so it was held in the case of *Dimmock v. Vixby,* 20 Pick., 368, that where one general right is claimed by the plaintiff, although the defendant may have distinct and separate rights, the bill of complaint is not multifarious. All of the cases were decided upon the principle of preventing a multiplicity of suits, which was the object of the 'clause' under consideration.

Applying the principles enunciated in the cases cited to our case, we are of the opinion the causes of action in the complaint were properly united, and the first ground of objection taken by the demurrer can not be sustained."

In *Banks v. Harris,* 84 N. C., 206, the plaintiff alleged that the defendant was indebted to it in the sum of $7,000, evidenced by two promissory notes, for money loaned under a contract prior to February 3, 1874; that on February 3, 1874; May 4, 1874; July 27, 1875, he made deeds to the respective defendants—Marsden Bellamy, Henry P. West, and John D. Bellamy—of separate lots of land, with false recitals of money considerations, with an understanding and agreement with each that they should reconvey to his wife, Julia Harris, which has been carried into effect, and with intent to defraud his creditors, and that he had fraudulently paid off $2,600.00 of judgments, and had them assigned to his wife; and that he owes debts exceeding $50,000, which all his property is insufficient to pay. The prayer is for judgment on the debts, and that the several deeds be declared void.

There was demurrer because of misjoinder of causes of action and of parties, which was overruled. The court, *Smith, C. J.,* delivering the opinion, citing *Glenn v. Bank,* 72 N. C., 626, said:

"It was there held to be competent to proceed against the insolvent debtor bank, and against the stockholders upon their individual liabilities under the charter, in the same

action. The last objection is to the joining of the several defendants, who are connected with different transactions, and are without any community of interest, and no combination among them is charged. The essential unity of the proceeding consists in the fact that the debtor's own property is alone sought to be appropriated to his own debt. If the conveyances are fraudulent, as for this purpose the demurrer admits, the title remains in Harris, and never was divested out of him. The aid of the Court is asked to remove a cloud upon the title, by declaring the deeds void, so that the property may be sold under the direction of the Court, and bidders be induced to give value for it. The defendants, other than Harris, are made parties because they by their deeds profess to have had an interest in the subject matter, and Section 61 of the Code requires they should be, in order that they may be concluded by the result, and the adjudication be final.

These general views we think are in accord with the current of decisions in respect to the construction of the provisions of the Code, whose predominant purpose is to make one proceeding adjust and settle all controversies about its subject matter. *Hamlin v. Tucker,* 72 N. C., 502,; *Young v. Young,* 81 N. C., 90, and the authorities therein cited and reviewed."

In *King v. Farmer,* 88 N. C., 22, the complaint alleged that the plaintiffs Mitchell King, Andrew Johnson, the defendant Farmer, and others, on September 29, 1847, purchased a site for a hotel, under an agreement that one should be erected and be under charge of the defendant Farmer as long as the members of the joint stock company to be formed should agree, and that in the meantime he should have the privilege of buying their shares. Shares of the par value of $100 were subscribed for by the members of the joint stock company, the land was purchased, and a deed was executed to the plaintiffs King and Johnson, in trust for the share-

holders; upon which a hotel was erected, and Farmer took possession as lessee, and has continued to hold possession, appropriating the rents and profits to his own use. That in 1853 the original parties to the agreement, and the defendant Aiken, who was admitted as a shareholder, contracted with Farmer to sell him the property for $13,500 (less $1,608, the amount paid by Farmer), and the purchase price was to be paid in installments within three years, with interest, the title to be retained until the purchase money was paid. That Farmer paid the first installment of $3,000, and has purchased the shares of some of the holders, but still owes part of the purchase money and rents, the amount of which the plaintiffs are unable to ascertain. That Johnson is dead, and his representatives are parties plaintiff, and the other shareholders and the representatives of such as are dead are defendants.

The prayer is for (1) an adjudication of the rights of the plaintiffs and defendants; (2) an account of the purchase money yet due, and to whom it should be paid; (3) an account of the rents and profits, and to whom this should be paid; (4) that if Farmer can not be compelled to pay the amount found due, then for a sale of the premises, that the trust be closed, and the trustees discharged.

There was demurrer by Farmer upon the grounds (1) that the other defendants were improperly joined with him in an action for specific performance; (2) that there was misjoinder of causes of action in that it is sought to have specific performance of the contract for the purchase of land, and to recover for rents and profits thereon, and against the defendants for a settlement of the affairs of the joint stock company.

The court, through *Judge Ashe,* who delivered the opinion, says: "But the several causes of action are such as (as will be hereinafter shown) may be and should be united, not only

FISHER *v.* TRUST CO.

under the provisions of the Code, but according to the practice in former equity proceedings."

Again the Court says: "As to the cause assigned for misjoinder of causes of action: Section 126 of the Code provides. that the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, when they all arise out of the same transaction, or transactions connected with the same subject of action; and sub-division 7 of the section requires that the causes of action 'must affect all the parties to the action.'

It was evidently the purpose of the legislature, in enacting this section, to prevent a multiplication of actions, by uniting in the same action different causes of action, where they might be joined without subjecting defendants to the trouble and expense of making different and distinct defenses to the same action.

No general rule has been or can be adopted with regard to multifariousness. It is most usually a question of convenience, in deciding which the Courts consider the nature of the causes united, and if they are of so different and dissimilar a character as to put the defendants to great and useless expense, they will not permit them to be litigated in the same record; but where the different causes of action are of the same character, and between the same parties, plaintiffs and defendants, and none other, and no additional expense or trouble will be incurred by the joinder of the several causes, the Courts, in the exercise of a sound discretion, on the ground of convenience, usually refuse to entertain an objection to the joinder."

Again the Court says: "In our case the agreement between the parties to form a joint stock company to build a hotel— to purchase land for its site—the fact of purchase—the erection of the hotel—the lease first, and then the sale to Farmer —all consitute a series of transactions connected together,

and forming one course of dealing." The demurrer was overruled.

In *Heggie v. Hill,* 95 N. C., 303, the action was brought to recover of the defendants Hill and Watkins, in one aspect of the case, the rents described in the complaint; and, in another, the recovery from the Building and Loan Association the surplus of the proceeds of the sale of the same land, after satisfying the debt. The defendants demurred upon the ground that separate and distinct causes of action were united in one complaint against the Building and Loan Association, and also against the other defendants, which have no connection with each other.

The Court, through *Judge Ashe,* said, overruling the demurrer:

"The Code, 267, Sub-Div.. 1, provides, 'that causes of action may be joined when they arise out of the same transaction, or transactions connected with the same subject of action.' This section of the Code, we do not think, makes any substantial change in the rules of practice which obtained, before the adoption of the Code, in the Courts of Equity with regard to multifariousness. *Whatever effect it may have had, has been to enlarge the right of uniting in one action different causes of action.*"

Again, quoting Bliss on Code Pleadings, Sec. 110, the Court says: "When several persons, although unconnected with each other, are made defendants, a demurrer will not lie if they have a common interest centering in the point in issue in the cause."

Again, quoting Sec. 126 of Bliss, the Court says: "Not only under this class may all causes of action be united in one proceeding, that arise out of the same transaction, but also those that arise from different transactions, provided they are connected with the same subject of the action."

In *Benton v. Collins,* 118 N. C., 196, the defendant was sued for damages, by reason of an assault made on plaintiff,

and it was alleged that Collins, the defendant, had fraudulently conveyed his property to the other defendants, and the plaintiff sought for judgment against Collins for damages, and against Collins and the others to set aside the conveyance as fraudulent. The defendants, other than the Trustee in the deed of trust from Collins, demurred upon the ground that a cause of action arising out of a tort was joined with the action to set aside the deed from Collins to his co-defendant as fraudulent, and further because the defendant sought to be subrogated to the surety of the defendant Collins' bond in arrest and bail proceeding, alleging that the surety had been indemnified by an additional conveyance of Collins' property. The Court overruled the demurrer.

In *Solomon v. Bates,* 118 N. C., 311, the plaintiff, a creditor of a bank, brought an action against the bank directors for gross negligence, whereby plaintiff was injured, and also because of the fraud and deceit of the directors, in making false statements and misrepresentations, which induced the plaintiff to deposit with the bank, and asked that the corporation might also be joined with the defendants or not as the plaintiff elected. There was a demurrer upon the ground that the several defendants were charged with an intent to defraud the public and the plaintiff by holding out the Bank of New Hanover as solvent, when no conspiracy among the defendants was alleged.

The Court held that, "while breach of a duty imposed by statute or express contract is *ex contractu,* the breach of a duty imposed by law arising upon a given state of facts is a *tort.*" Again the Court said: "There is the same 'subject of action' throughout, i. e., the plaintiff's loss of his deposit. If this ground of demurrer had been well founded, the remedy would have been not to dismiss but simply to divide the action, which would have caused a multiplicity of actions,

138——16

with increased costs to the parties and the public as well, without any benefit, apparently, to the defendants."

In *Cook v. Smith,* 119 N. C., 350, the plaintiff brought an action against the defendants, alleging that the defendants sheriff and sureties on his bond were liable, and that a person who directed or procured such levy and sale to be made, together with those on an indemnity bond, which said person had given, were liable. There was a demurrer because there was an alleged misjoinder of causes of action. The Court held that there was no valid objection upon the ground of a misjoinder, and said in part:

"In the full discussion of this question at last term, in *Benton v. Collins, supra,* the authorities are reviewed, and it is pointed out that when the causes of action arise out of the same transaction they may be joined, though one should be for a *tort* and the other in contract, and such seems the manifest intention of Section 267 of *The Code.* Suppose the demurrer for misjoinder were sustained, the Court could merely order the action divided into two (*Code,* Sec. 272; *Pretzfelder v. Insurance Company, supra*), and then on the trial of each of those actions the same witnesses would be introduced, the same transaction proved, and the same questions of liability would arise, thus doubling the time and expense of the litigation, without any possible benefit to anyone. It is to prevent this very state of facts that *The Code,* Sec. 267, expressly provides that 'the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, when they arise out of (1) the same transaction, or transactions connected with the same subject of action.'"

In a still more recent case, *Daniels v. Fowler,* 120 N. C., 16, the court cites nearly all of the above cases, giving brief extracts, and sums up in the language of *Ruffin, C. J.,* in *Bedsole v. Monroe,* 40 N. C., 313, that if the grounds of

the complaint "arise out of one and the same transaction, or a series of transactions, forming one course of dealing, and all tending to one end; if one connected story can be told of the whole," it is not multifarious. In this opinion we have gone over the same ground, only giving at length the facts in each case, and longer extracts from the same opinions, for which we are indebted to the plaintiff's brief. The three latest cases above quoted are cited with approval by *Walker, J.,* in *Reynolds v. Railroad,* 136 N. C., 347.

The above authorities are clear, full and explicit. It is unnecessary for us to reiterate what has been so well said therein. The joinder of causes and parties in this action is fully justified by the precedents and is in the interest of a full and fair investigation of the fraud charged. In overruling the demurrer there was

No Error.

CONNOR, J., dissenting: As far back as 1879, in *Young v. Young,* 81 N. C., 91, Mr. *Justice Ashe* said: "While it was the object of the legislature by adopting section 126 of The Code (now section 267) to avoid a multiplicity of suits and prevent protracted and vexatious litigation, the first sub-division of the section has given rise to more unprofitable litigation and fine spun disquisition upon its construction than any other section, not excepting section 343 (590)." After reviewing a number of decisions, he concludes: "And so complex, uncertain and defiant of logic has the subject proved that the courts have failed to derive any aid from even the 'reason of the thing', that *dernier* resort of some judges when all other resources have failed." With this uninviting introduction to the subject, one may well hesitate to enter upon its discussion. With all possible deference to the judges, an examination of the cases, since the words quoted were written, does not show any very marked progress in placing the subject on any satisfactory

basis. A perusal of the very full briefs of counsel in this case only tends to illustrate the truth that judges are not unlike doctors in their proverbial tendency to differ. It is not in this case a matter of very great importance whether the demurrer be sustained or overruled, and the usual reason, which is advanced for writing dissenting opinions that the decision of the court is out of line with the precedents, does not exist, because it must be conceded I think that each brief contains decisions which fully sustain the respective views. If we attempt to follow the numerous decisions in the Code States, we will soon find ourselves in a labyrinth of ever crossing paths leading to confusion worse confounded.

I cannot concur with the opinion of the court, not because I think it is unsupported by authority, but because I think the weight of authority and the "reason of the thing" the other way, and that it is productive of confusion and probable injustice. A few general elementary propositions appear to be practically agreed upon. "A claim against two or more defendants cannot be properly united in the same bill with a separate claim against one only. Beach Mod. Eq. Pr. Sec. 421. Causes of action which may be joined must affect all parties to the action. Therefore, when a complete determination to a cause of action, joined with others, requires parties not necessary to the other causes of action, held to be demurrable." *Logan v. Wallis,* 76 N. C., 416. *Rodman, J.* says: "The fifth cause of action is misjoined with the others." C. C. P. Sec. 126 says that "The causes of action which may be joined *must affect all the parties to the action."*

"The defendants in each statement must be the same; *that is the parties must be affected by each cause of action,* and it is a misjoinder (in equity pleading it is called multifariousness) to charge certain persons as respects one cause of action, and in another statement bring in another party

or show another party is interested, or that some of the necessary parties in the former statement are not interested." Bliss Code Pleading 123. If these propositions are correct, I am unable to see any "legal affinity" between the cause of action alleged against The Southern Loan & Trust Company and Wharton based upon alleged dealings with the plaintiff's intestate resulting in the conveyance to a trustee for the Trust Company which it is sought to cancel, and the cause of action against Wharton alone for alleged misconduct in the sale of the Benbow Hotel, in which so far as I am able to perceive, the Trust Company has and can by no possibility have the most remote interest. A careful examination, with the aid of very able briefs and oral arguments, fails to discover any other connection between Wharton's dealing with Fisher in respect to the Benbow Hotel and the Trust Company building and the contracts relating thereto, than that which arises from the fact that two of the persons are parties to one and three of them to the other transaction. No judgment upon or in regard to the sale of the Benbow Hotel could possibly affect the Trust Company—therefore, by the test which this court in *Logan v. Wallis, supra,* applied, they should not be joined; that the judgment "must affect all the parties to the action." While it would not be profitable to undertake to distinguish the many cases cited in the plaintiff's brief and relied upon by the court from the one before us, it may be noted that in *Gaines v. Chew,* 2 How. (43 U. S.) 619, the court held that in respect to one defendant there was a misjoinder, because she claimed under another source.

Mr. *Justice McLean* says in respect to another objection: "In the rendition of this account the other defendants have no interest, and such a matter, therefore, ought not to be connected with the general objects of the bill."

In *Benton v. Collins,* 118 N. C., 196, the primary right sought to be enforced against Collins was redress for per-

sonal injury. It was alleged that for the purpose of obstructing the enforcement of this right he had made a fraudulent conveyance to the other defendants of his property. The joinder of the two causes of action was properly sustained. The question is thus stated by *Smith, C. J.*, in *Bank v. Harris*, 84 N. C., 206: "Why should a plaintiff be compelled to sue for and recover his debt and then to bring a new action to enforce payment out of his debtor's property ‚in the very court that ordered the judgment?" When the mind accepts the truth that in respect to the ultimate relief which the law gives to one sustaining a personal injury is the same as that given for failure to pay a debt—a final process against the defendant's property, it is clearly seen that there is no reason why obstruction to such relief may not be removed by the same judicial procedure in the one case as in the other. The proposition is stated "when several persons, although unconnected with each other, are made defendants, a demurrer will not lie if they have a common interest centering in the point in issue in the cause." *Heggie v. Hill*, 95 N. C., 303. This is equally applicable to the decision in *Daniels v. Fowler*, 120 N. C., 14; *Hamlin v. Tucker*, 72 N. C., 502. It is said, however, that "if one connected story can be told of the whole, then the objection cannot apply." This phrase has been used by many eminent equity judges and when kept within proper limitations is a happy one. Happy phrases and epigrams like analogies, may sometimes be overworked. In *Bedsole v. Monroe*, 40 N. C., 313, in which the expression is used by *Ruffin, C. J.*, there was but one defendant. The *Chief Justice* expressly notes the difference in the practice sustaining demurrers for multifariousness where two defendants are brought in, and where only one is before the court. A man's entire business career is, in a certain sense, one connected story. Each part is interlinked with and in a measure dependent upon that which precedes it. Certainly it is in no such sense

FISHER *v.* TRUST CO.

that all persons with whom he deals or has business rela-
tions are correlated for the purpose of being joined in one
civil action in courts of justice. There must be some "legal
affinity" between persons and transactions to entitle him to
bring them into court yoked together. A failure to observe
this elementary principle in the law of procedure destroys
that reasonable certainty and simplicity in the administra-
tion of justice which is so desirable and produces confusion,
uncertainty and injustice. All reforms are endangered and
often defeated by their advocates who in turning their backs
upon the past, rejecting its teachings based upon experience,
plunge into unknown and untried fields, causing to come
about the very evils which they vainly suppose they are
avoiding. Any one at all conversant with judicial proceed-
ings, knows that substantive rights and liabilities are indis-
solubly connected with remedial rights and liabilities.
Without further discussion of a subject which is not indebted
to either text writers or judges to any very great extent for
clarification, I content myself with saying that I am unable
to see in what way the several causes of action set forth in
the complaint can be said to be "the same transaction or
transactions connected with the same subject of action." If
the plaintiff, as The Code requires, had stated separately the
two or more causes of action, the absence of legal relationship
would have been more transparent. I think that the demur-
rer should have been sustained and such order made as The
Code provides.

WALKER, J. concurs in the dissenting opinion.