BALFOUR QUARRY COMPANY and AMERICAN STONE COMPANY v. WEST CONSTRUCTION COMPANY.

(Filed 24 November, 1909.)

1. **Pleadings—Demurrer—Admissions.**

Every demurrer directed to the incapacity of the plaintiff to sue, to the misjoinder of parties or causes of action, or to jurisdiction, admits the facts alleged for the purpose of the demurrer. *Merrimon v. Paving Co.,* 142 N. C., 556, cited and approved.

2. **Pleadings—Demurrer—Misjoinder—Parties—Causes of Action.**

When the complaint alleges that the defendant is indebted to each of the two parties plaintiff in different amounts for goods sold and delivered, in this case crushed rock for street purposes, under a contract with one of them, the other performing a part of the contract of the co-plaintiff with the consent of the defendant, a demurrer for misjoinder of parties and causes of action is bad: (*a*) if the defendant were solely liable to one of the plaintiffs under his contract for both amounts, the joinder of the other plaintiff would be superfluous and harmless; (*b*) and, if he were responsible to both plaintiffs upon a joint contract, it would be bad, for both of them would be interested in both causes of action. The precedents upon this principle reviewed, discussed and applied by WALKER, J.

APPEAL by defendant from *E. B. Jones, J.,* February Term, 1909, of ROWAN.

The facts are stated in the opinion of the Court.

*Clement & Clement* and *Walser & Walser* for plaintiff.
*E. E. Raper* for defendant.

WALKER, J. This action was brought by the Balfour Quarry Company and the American Stone Company against the West Construction Company to recover the sum of $2,113.84, the amount alleged to be due under a contract between the plaintiff and the defendant to furnish crushed granite or rock for the purpose of enabling the West Construction Company to perform a contract with the town of Lexington to macadamize certain streets in said town. The contract for furnishing the crushed rock was originally made by the town of Lexington with the Balfour Quarry Company, by which the quarry company con-

tracted and agreed to furnish about 14,000 tons of the crushed rock, divided into different quantities, of specified sizes or quality. There were special provisions in the contract not necessary to be stated, as they are immaterial to the decision of the case. It is sufficient to say that the quarry company furnished a part of the stone itself and sublet, if we may use that term, a part of its contract to the construction company, by which the American Stone Company was permitted by the construction company to furnish the rest. There was correspondence, by letters, between the quarry company and the construction company with reference to the contract of the former company with the American company, in which the quarry company, by letter, dated 7 June, 1907, requested the construction company to ratify or confirm its contract with the stone company. To this letter the construction company replied as follows: "We can only confirm that part of your letter that this order was placed with the Balfour Quarry Company and that they have asked you to ship us, and as we wish to state that on all shipments you make us to Lexington, N. C., we will pay you at the rate named in your letter, of 90 cents per ton of 2,000 pounds of stone at quarry, and freight at 40 cents per ton. We can use all the stone that you can ship us, and would thank you to make prompt shipments, but you can readily understand that we have made a contract with the Balfour Quarry Company for all stone that we will need on this work, and could not recognize you in the matter or agree to any assignment of contract, as we could only hold the Balfour quarry people responsible; but, as stated to you before, we will make prompt settlement with you for all stone you can ship. Please bear in mind that in making shipments of this stone to us we wish you to make same in gondola or bottom-dump coal cars, as we have secured a trestle in Lexington on which cars will be run out and dumped; so bear in mind that under no circumstances do we want flat-bottom cars. We trust that the above will be satisfactory to you."

There is no contention that the quarry company or the stone company failed to comply with their part of the contract, and there could not well be at this stage of the case, as compliance is alleged in the complaint; and the demurrer, as matter of law, admits the facts therein stated, for the purpose of passing upon the validity of the complaint, or, more concisely speaking, the question raised by the demurrer. As is so well said by our former associate, *Justice Connor,* in *Merrimon v. Paving Co.,* 142 N. C., 556, "Every demurrer directed to the incapacity of the plaintiff to sue, the misjoinder of parties or causes of action or

jurisdiction, admits the facts alleged, for the purpose of the demurrer. Any other construction of the demurrer which did not reach the merits of a controversy would make it a vain thing."

The complaint shows that there are two causes of action set forth—one for the recovery of the amount due by the defendant to the quarry company, and the other for the recovery of the amount due by the defendant to the other plaintiff, the American Stone Company; the amount due to the quarry company being $1,405.74, and to the American Stone Company, $708.10, as shown by itemized accounts, annexed as exhibits to the complaint.

The defendant demurred to the complaint upon the following grounds: "There is a misjoinder of parties plaintiff and also of causes of action, as follows: The first cause of action is in favor of the plaintiff, Balfour Quarry Company, against the defendant, in which the co-plaintiff, American Stone Company, is in nowise interested, and to which the American Stone Company is an improper party. In the second cause of action there is set out a cause of action in favor of the American Stone Company, in which the co-plaintiff, Balfour Quarry Company, is not interested and therefore not a necessary or proper party."

The court below overruled the demurrer, and the defendant appealed.

Our opinion is that *Judge E. B. Jones,* who presided at the trial, took the right view of the case and should be sustained in his ruling. The demurrer is predicated upon the contradictory notion that there was a contract between the defendant and the stone company, and that there was not. If there was a separate contract with the latter company which, by its terms or by clear legal intendment, released the quarry company and relieved it to the extent of the crushed rock to be furnished by the stone company, there might be some merit in the demurrer, because in that case there would be two distinct contracts—one by the quarry company to furnish a part of the crushed rock, and the other by the stone company to furnish the remainder. But the letter of the defendant to the stone company, dated 11 June, 1907, sufficiently disposes of any such contention. By that letter it expressly refused to discharge the quarry company from liability or to substitute the stone company in its place. But if that letter is construed as making a joint contract between the quarry company and the stone company on the one side and the defendant on the other, the demurrer must necessarily fail, as *both* plaintiffs in that case would be interested in *both* causes of

action, and consequently there would be no misjoinder of parties or causes of action. If the quarry company was responsible solely to the defendant for furnishing the rock, then there is no harmful misjoinder, as the joining of the stone company as a "superfluous" plaintiff would be immaterial and could in no way prejudice the defendant in the trial of the case. It would seem vain and idle to attempt the demonstration of these propositions by argument or the citation of authorities, but we will refer to a few of the precedents in this Court. *Green v. Green,* 69 N. C., 294; *Warrenton v. Arrington,* 101 N. C., 109; *Perkins v. Berry,* 103 N. C., 131; *Abbott v. Hancock,* 123 N. C., 99. In *Green v. Green* the correct principle is substantially stated by *Chief Justice Pearson,* as follows: A defect of parties is ground of demurrer, but too many parties is mere "surplusage," and is easily cured by a judgment for costs or a disclaimer. A nonjoinder of one who is a necessary party is fatal, for he will not be bound by the judgment; this affects the merits, but a misjoinder of one who is not a necessary party, and whose interests, therefore, cannot be prejudiced by the judgment, is clearly harmless. It was in this case that the great Chief Justice expressed his earnest desire to decide every case according to the very right of it, without any reference to the nature of it or to those who may be concerned in its results. What he said is worthy of repetition here: "This Court is willing at all times, before the opinion is filed, to avail itself of the aid of the members of the bar in 'the search after truth,' by briefs filed, presenting a new view, based on the facts of the case, or a reference to additional authorities directly in point." And again: "We take this notice of the point made by the defendant's attorney, out of the great respect we have for his learning and ability, and with the hope that it will be an admonition to counsel hereafter not to allow their professional zeal to result in overlooking the facts of the case in order to present 'a nice point of law' to the Court." We add to this, although not specially applicable to this case, that counsel will render their clients a great service if, at the very beginning of their briefs, especially the appellant's counsel, they will make a fair and succinct statement of the case, so that this Court may see almost at a glance what are the issues of law between the parties and the more understandingly listen to the oral argument. Such a statement also greatly lessens the labors of the members of this Court in hearing, considering and deciding the case. Our work here is already very hard and onerous, at the best, due largely to the difficulty in extracting the material facts from the records. This can to some extent be remedied by

QUARRY COMPANY *v.* CONSTRUCTION COMPANY.

a careful observance, in preparing briefs, of the positive rule of this Court requiring such a statement. It must not be understood by what we have said that the latter words of *Chief Justice Pearson* quoted by us, though not literally, apply to the defendant's counsel in this case, as they do not, for no more diligent and painstaking or more fair or frank an attorney has ever appeared before us. He is always true and loyal to his client, "flinging away the scabbard and fighting for a funeral," to be sure, when the battle line has been formed, but he is also equally true and loyal to this Court. "He brings nothing false before it," but tries his cases upon their real merits. And this tribute extends to members of the bar generally.

Returning to the precise question involved, if the stone company acquired any interest in the contract, as a partner with the quarry company, by virtue of the correspondence between the parties, we must still decide that the two causes of action were properly joined, as the interests of the plaintiffs as against the defendant were joint and not several. We collect here—and hope it will be of some service to those who may hereafter bring actions of this kind—some of the decisions upon this important subject. The writer of this opinion and *Judge Connor,* our former associate, did not agree with their brethren, at the time some of the decisions were made, in all that is said in the cases cited, but I will abide by what the majority of the Court have declared to be the law, for that is my duty. The law as thus declared by our predecessors may be thus stated:

1. "If the grounds of the bill be not entirely distinct and wholly unconnected, if they arise out of one and the same transaction or series of transactions, forming one course of dealing and tending to one end, if one connected story can be told of the whole, then the objection cannot apply." *Bedsole v. Monroe,* 40 N. C., 313.

2. "The plaintiff may unite in the same complaint several causes of action when they arise out of the same transaction or transactions connected with the same subject of action, the purpose being to extend the right of the plaintiff to join actions, not merely by including equitable as well as legal causes of action, but to make the ground broad enough to cover all causes of action which the plaintiff may have against the defendant arising out of the same *subject* of action, so that the Court may not be forced 'to take two bites at a cherry,' but may dispose of the whole subject of controversy and its incidents and corollaries in one action." *Hamlin v. Tucker,* 72 N. C., 502.

3. "We are of the opinion that the bill is in no sense multifarious; it is true that it embraces the claims of both companies, but their interests are so mixed up in all these transactions that entire justice can scarcely be done without a union of the proprietors of both companies; and if they had not been joined, the bill would have been open to the opposite objection that all the proper parties were not before the Court, so as to enable it to make a final and conclusive decree, touching all their interests, several as well as joint." *Oliver v. Peall,* 3 How., 33.

4. "We find it held that if the grounds be not entirely distinct and unconnected, if they arise out of one and the same transaction or series of transactions, forming one course of dealings and all tending to one end, if one connected story can be told of the whole, the objection of multifariousness does not arise. Story Eq. Pl., sec. 271; *Bedsole v. Monroe,* 40 N. C., 313. And if the object of the suit is single, and it happens that different persons have separate interests in distinct questions which arise out of a single object, it necessarily follows that such different persons must be brought before the Court in order that the suit may conclude the whole subject." *Young v. Young,* 81 N. C., 91; *Salvidge v. Hyde,* 5 Mad., 138.

5. "The several causes of action are such (as will be hereinafter shown) that they may be and should be united, not only under the provision of the Code, but according to the practice in former equity proceedings. As to the cause assigned for misjoinder of causes of action, section 126 of the Code provides that the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, when they all arise out of the same transaction or transactions connected with the same subject of action; and subdivision 7 of the section requires that the cause of action 'must affect all the parties to the action.' It was evidently the purpose of the Legislature in enacting this section to prevent a multiplication of actions by uniting in the same action different causes of action, where they might be joined without subjecting defendants to the trouble and expense of making different and distinct defenses to the same action. No general rule has been or can be adopted with regard to multifariousness. It is most usually a question of convenience, in deciding which the courts consider the nature of the causes united, and if they are of so different and dissimilar a character as to put the defendant to great and useless expense they will not permit them to be litigated in the same records; but where the different causes of action are of the same character and be-

tween the same parties, plaintiffs and defendants, and none other, and no additional expense or trouble will be incurred by the joinder of the several causes, the courts, in the exercise of a sound discretion, on the ground of convenience, usually refuse to entertain an objection to the joinder." The Code, sec. 267, subdiv. 1, provides that causes of action may be joined when they arise out of the same transaction or transactions connected with the same subject of action. This section of the Code, we do not think, makes any substantial change in the rule of practice which obtained before the adoption of the Code in the courts of equity with regard to multifariousness. Whatever effect it may have had has been to enlarge the right of uniting in one action different causes of action." *King v. Farmer,* 88 N. C., 22.

6. "Suppose a demurrer for misjoinder (of parties) were sustained, the Court could merely order the action divided into two actions, and then on the trial of each of these actions the same witnesses would be introduced, the same transaction proved and the same questions of liability would arise, thus doubling the time and expense of the litigation, without possible benefit to anyone. It is to prevent this very state of facts that the Code, sec. 267, expressly provides that 'the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, when they arise out of the same transaction or transactions connected with the same subject of action.' *Cook v. Smith,* 119 N. C., 350." This is clearly the law.

In this case there is the same subject of action throughout—that is, in the plaintiff's complaint, calling upon the defendant to respond in damages to his claim to recover for the price of the stone furnished the defendant under the contract. If the defendant's contention had been well founded, the remedy would have been either to dismiss or simply to divide the action, as the nature of the misjoinder required, which would have caused the prosecution of two actions, with increased cost to the parties and the public as well, with no benefit apparently to the defendant. The joinder of causes of action and parties in this action is fully justified by the precedents and is in the interest of the full and fair investigation of plaintiffs' claim against defendant, with as little cost as possible. *Fisher v. Trust Co.,* 138 N. C., 224.

We are unable to see what the defendant can gain, in any conceivable way, even if his demurrer should be sustained. It is better for the defendant that it should be overruled and the case tried before the jury upon its actual merits, if it has any real defense. We have discussed this question somewhat at length,

because of the frequency with which similar matters have been brought before us, and in the hope that the principles discussed and the many authorities cited may tend in some degree to a more perfect understanding of the spirit of the Code as to the joinder of parties and causes of action.

For the reasons stated, we must affirm the judgment of the court.

Affirmed.