CRAVEN COUNTY v. THE INVESTMENT COMPANY, A CORPORATION, ET AL.

(Filed 21 October, 1931.)

1. **Pleadings D b—Motion to dismiss for misjoinder of parties and causes held properly overruled in this case.**

    While at common law the object was to confine the litigation to one issue, in equity the object was to end all disputed matters between the parties having an interest therein in one suit, and under our code procedure in which both actions at law and suits in equity are tried in one forum, and under the provisions of C. S., 507, permitting the plaintiff in certain instances to unite several causes of action in the same com-

plaint, *Held:* where there is but one subject-matter of the suit or action in which several parties have divergent interests, and they may all be united in one suit without undue increase of cost or inconvenience to the parties, a motion to dismiss for multifariousness and misjoinder of parties is properly denied.

2. **Same—Multifariousness is to be determined according to rules of equity pleading.**

In interpreting our statute with regard to multifariousness and misjoinder of parties our courts will take into consideration the principles of the old practice formerly existing exclusively in suits in equity. C. S., 507.

3. **Election of Remedies A c—Under the facts of this case plaintiff was not put to his election between action on contract or in tort.**

Generally under our reformed procedure several causes of action may be united if they arise out of the same transaction or a transaction connected with the same subject-matter of the action, whether legal or equitable or in contract or tort, and in this action *Held:* the elements of contract and tort are so closely related that defendant's motion calling for the election of the plaintiff to sue either in contract or tort was properly denied.

APPEAL by The Investment Company, a corporation, and other defendants from *Devin, J.,* at May Term, 1931, of CRAVEN.

The appealing defendants made a motion to strike certain allegations from the complaint, or upon refusal thereof to require the plaintiff to make an election as to the allegations upon which it will rely in the prosecution of its suit. The motion was denied and an exception was noted. Exception was taken also to the order appointing a receiver of The Investment Company.

The material allegations of the complaint may be summarized as follows:

1. The National Bank of New Bern conducted a general banking business in New Bern and suspended its business on 20 March, 1929. It assigned certain assets and property to the First National Bank of New Bern, which undertook to assume its obligations, its affairs not disposed of by this assignment being in the hands of W. W. Griffin, a liquidating agent. During this time W. W. Griffin was president of the National Bank of New Bern, E. C. Rae was vice-president, W. J. Caroon was cashier, and W. W. Griffin, E. H. Meadows, Harvey M. Jacobs, W. J. Caroon, E. C. Rae, A. D. Ward, and J. Haywood Jones were directors, all of whom are appealing defendants.

2. The First National Bank of New Bern was chartered 20 March, 1929. J. Vernon Blades was president, Hugh P. Beal was vice-president, and W. J. Caroon was cashier. The directors were J. Vernon Blades, F. H. Whitty, Hugh P. Beal, W. F. Dowdy, W. W. Griffin, and C. Wal-

ker Hodges. This bank closed its doors 26 October, 1929, and in November, 1929, R. E. Schumacher was appointed receiver by the Comptroller of the Currency.

3. On 16 June, 1928, The Investment Company was incorporated. The stockholders were E. H. Meadows, W. W. Griffin, and E. C. Rae. Rae was president, Meadows vice-president, and Griffin secretary and treasurer. The capital stock was fixed at $300, the authorized capital at $50,000.

4. ...................... ..... .

5. The National Bank of New Bern procured deposits and loans from the county of Craven aggregating more than $400,000. The Comptroller of the Currency called upon the bank to strengthen its cash and reserves and to eliminate worthless credits, and the officers procured the organization of The Investment Company, which was controlled by the bank, having the same officers and directors. The object of organizing the company was to get other funds from the county to relieve its condition; and without giving the county adequate information of its condition the officers continued their efforts to procure additional funds.

6. On or about 12 March, 1929, the county of Craven had funds from a note issue amounting to $500,000 or more in funds, and the said officers of the National Bank of New Bern, the First National Bank of New Bern, and The Investment Company, entered into and formed the plan of organizing a new national bank with a capital stock of $150,000, and a surplus of $30,000, which was to be organized for the purpose of taking over and carrying on the general banking business of the National Bank of New Bern and undertook thereby to transfer the liabilities of the National Bank of New Bern to said newly organized corporation, the charter for which was to be procured at the instance of the officers.

7. J. Vernon Blades was at the time heavily indebted to the National Bank of New Bern as principal and as endorser on the notes of numerous corporations, in each of which he was the largest or a large stockholder and officer, and by virtue of his endorsement was indebted to the National Bank of New Bern in the sum of $50,000 or more, which his said corporations had been unable to pay. Blades was called into conference with the directors of the National Bank of New Bern and the condition of the bank was fully discussed and the plan of organizing a new bank to take over the banking business of the National Bank of New Bern and to assume its liabilities, was arranged for, and at said time it was understood and agreed that in such new organization Blades, who was reputed to be a man of substantial means and resources, was

to be chosen as president of the new organization. Certain other business men in New Bern were selected to become stockholders and directors of the First National Bank of New Bern, to wit, the defendants Hodges, Dowdy, Whitty, who were associated with Blades, and W. W. Griffin and Hugh P. Beal, who were managing officers and directors of the National Bank of New Bern, which board was to constitute the board of directors of the First National Bank of New Bern.

8. The officers of the National Bank of New Bern and the officers of the First National Bank of New Bern, and of The Investment Company, a subsidiary, subordinate and owned corporation of the National Bank of New Bern, applied to the plaintiff county of Craven to procure a loan of $180,000 to be made to and in the name of The Investment Company and by The Investment Company to be immediately turned over to the defendants Blades, Meadows, Jacobs, Hodges, Whitty, Dowdy, Griffin, and Beal, who knew the funds were advanced to them individually by the plaintiff and that The Investment Company was simply an instrument and conduit therefor.

9. By the methods hereinbefore alleged, Blades took and accepted from the county of Craven of the funds belonging to said county the sum of $160,000 and used the same for his own purposes, and became thereby liable to the county of Craven for money had and received in the sum of $160,000, with interest thereon from 12 March, 1929, until paid.

10. In the same way Hodges accepted from the county of Craven the sum of $3,000 and used the same for his own purposes and became thereby liable to the county of Craven for money had and received in the sum of $3,000, with interest thereon from 12 March, 1929, until paid.

11, 12, 13, 14, 15, 16. The same allegations as to the receipt of certain sums by Dowdy, Griffin, Whitty, Beal, Meadows, and Jacobs.

17. The sum of $180,000 was procured by representations that it would enable the First National Bank of New Bern to pay off the obligations of the National Bank of New Bern and save the depositors and the county from loss.

18. The amount received by each of the defendants is set out, and it is alleged that they used the several amounts in the purchase of stock in the First National Bank of New Bern.

19. The sum of $180,000 was received by the defendants named in paragraphs 11-16 and not by The Investment Company, although the company executed its note to the plaintiff for this amount. The money was procured by a collusive scheme worked out as alleged. The Investment Company is insolvent, never having had a capital of more than $300.

20. The procurement of the funds of the county of Craven to the extent of $180,000 by the officers of the defendant corporations was fraudulent and collusive and a device and scheme instigated and set up for the purpose of getting the funds belonging to the county of Craven, without giving just, adequate, and sufficient securities therefor as required by law.

21. The Investment Company has no assets and no officers, and has never transacted any business of a corporate character; a receiver should be appointed for it.

22. The defendants are in possession of all the books, records, and accounts of the transactions hereinbefore set out, and the plaintiff is without full knowledge or information concerning the same, and it is necessary for the plaintiff to have a full and complete accounting and statement from the defendants and each of them, and from the books of said corporations as to the matters and things particularly set out, and with particular reference to the plan and manner of transfer of the $180,000 belonging to this plaintiff to the personal and individual accounts of the defendant directors and stockholders of the First National Bank of New Bern.

23. By reason of the wrongful, unlawful and fraudulent scheme and device this plaintiff has been damaged in the sum of $180,000.

24. At the time of the transaction hereinbefore alleged, the defendant Blades was a man of large means and was worth several hundred thousand dollars.

25. Several large judgments have been recovered and docketed against Blades.

26. On several of his obligations the Neuse Lumber Company was the principal debtor, and is the owner of large property. It is still engaged in business. Executions on judgments recovered against Blades and the Lumber Company have issued only against Blades, under which his property has been advertised for sale. He procured this procedure to the end that his property may be sold and the property of the Lumber Company exempted so as to deprive the plaintiff of its remedy against him.

27. Advertisement of Blades' property attached.

28. This plaintiff is entitled to have and compel the judgment plaintiff in the several actions to exhaust its remedy against the Neuse Lumber Company, the principal debtor therein, to the end that the property of the said Blades may be thereafter subjected to the payment of the obligations due the plaintiff.

29. If the sale under execution is allowed to proceed, the property advertised for sale will bring much less than its true value and little if

any surplus will be realized therefrom, and Blades will undertake and attempt to procure the purchase of the same at such depressed values as will entirely destroy any remedy which the plaintiff may have for the collection of the obligations due to it by Blades.

The plaintiff prays judgment against the defendants jointly and severally; for the appointment of a receiver of The Investment Company; that the defendants be required to answer on oath; that the banks and The Investment Company make a full statement from their books; and that the sale of the Blades property be restrained.

The appealing defendants moved the court to strike from the complaint allegations 20 to 29 inclusive because redundant, irrelevant, and prejudicial, and because the complaint is multifarious; asking an election, in any event, between the alleged causes in contract and in tort.

The motion was denied and the defendants excepted.

*Moore & Dunn and Warren & Warren for plaintiff, appellee.*
*J. C. B. Ehringhaus, William F. Ward, H. P. Whitehurst, R. E. Whitehurst, W. B. R. Guion, and D. L. Ward for appellants.*

ADAMS, J. With respect to parties and causes of action there is a distinction between proceedings in courts of law and proceedings in courts of equity. The object of the common-law courts as originally constituted was to reduce the litigation to a single issue and upon such issue to obtain a decision—on an issue of law from the court and on an issue of fact from the jury; but by statutory enactment several distinct issues were permissible in the same action. In courts of equity the object sought is a complete decree on the general merits—the administration of justice by settling the rights of all parties interested in the subject-matter of the suit. Hence it is that all persons materially interested therein, whether legally or beneficially, should be made parties, however numerous, so that all may be bound by the final decree. Story's Equity Pleadings, sec. 72, *et seq.*

This does not imply that a suit may be prosecuted on a bill or complaint which is multifarious. It is not permissible to unite in one complaint several matters of an entirely distinct and independent nature against several defendants, thereby compelling the joinder of several defenses upon unrelated matters. "But," says Story, "the objection must still be confined to cases where the case of each particular defendant is entirely distinct and separate in its subject-matter from that of the other defendants; for the case against one defendant may be so entire as to be incapable of being prosecuted in several suits; and yet some other defendant may be a necessary party to some portion only

of the case stated. In the latter case, the objection of multifariousness could not be allowed to prevail. So, it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others." Eq. Pl., sec. 271(a).

Prior to the adoption of Code of Civil Procedure this practice prevailed in equitable proceedings in this State. It was applied in *Bedsole v. Monroe,* 40 N. C., 313. In discussing the objection of multifariousness the Court held that the principle can apply only when two things concur: (1) when the different grounds of suit are wholly distinct and (2) when each ground would sustain a bill. In explanation of the principle *Ruffin, C. J.,* said: "If the grounds of the bill be not entirely distinct and wholly unconnected; if they arise out of one and the same transaction or series of transactions, forming one course of dealing and all tending to one end; if one connected story can be told of the whole, then the objection cannot apply."

A change in the practice was made when the Code of Civil Procedure was adopted and it was provided that the plaintiff may in certain cases unite in the same complaint several causes of action. C. S., 507.

It was the purpose of the Code substantially to conform to the old equity practice and "to look to those old landmarks for a guide through the mist that enveloped the subject." *Young v. Young,* 81 N. C., 92. In the cited case *Ashe, J.,* who delivered the opinion, remarked that while it was the object of the General Assembly by adopting the Code of Civil Procedure to avoid a multiplicity of suits and prevent protracted and vexatious litigation, the first subdivision of the section has given rise to more unprofitable litigation and fine-spun disquisitions upon its construction than any other section."

By reason of the unsuccessful attempt to define and definitely to limit the scope of the section providing for the joinder of causes, the Court suggested in *Heggie v. Hill,* 95 N. C., 303, that it makes no substantial change in the rules which formerly prevailed in courts of equity except to enlarge the right of uniting several causes in one action, the purpose being, as stated by *Pearson, C. J.,* "to extend the right of plaintiffs to join actions, not merely by including equitable as well as legal causes of action, but to make the ground broad enough to cover all causes of actions which a plaintiff may have against a defendant arising out of the same subject of action." *Hamlin v. Tucker,* 72 N. C., 502. It is said in the opinion that the court may of its own motion refuse to pass upon matters which are not germane if the action becomes so complicated and confused as to embarrass the court in its investigation. The attempt to conform these provisions to the practice

in equity brought about the following as one of the results: "No general rule has been or can be adopted with regard to multifariousness. It is most usually a question of convenience, in deciding which the courts consider the nature or the causes united, and if they are of so different and dissimilar a character as to put the defendant to great and useless expense they will not permit them to be litigated in the same records; but where the different causes of action are of the same character and between the same parties plaintiffs and defendants, and none other, and no additional expense or trouble will be incurred by the joinder of the several causes, the courts, in the exercise of a sound discretion, on the ground of convenience, usually refuse to entertain an objection to the joinder." *Quarry Co. v. Construction Co.,* 151 N. C., 345.

The motion to strike out certain allegations is based upon the contention that the complaint sets out two causes of action which are distinct and unrelated, one in contract, another in tort. It is insisted that the cause stated in the first nineteen paragraphs is *ex contractu* and that the cause stated in the remaining paragraphs is *ex delicto,* and that the two cannot properly be united in one action. True, at common law there could be no such joinder. *Logan v. Wallis,* 76 N. C., 416; *Doughty v. R. R.,* 78 N. C., 22. But under the reformed procedure it is held as a general proposition that several causes may be united if they arise out of the same transaction or a transaction connected with the same subject of action, whether legal or equitable, whether in contract or in tort. *Cook v. Smith,* 119 N. C., 350; *Daniels v. Fowler,* 120 N. C., 14; *Reynolds v. R. R.,* 136 N. C., 345; *Hawk v. Lumber Co.,* 145 N. C., 47; *Worth v. Trust Co.,* 152 N. C., 242.

There was, therefore, no error in denying the motions of the defendants. The elements of contract and tort are so closely related as to preclude the defendants' right to require an election, and to make the allegations of the complaint the recital of a series of transactions connected with the same subject of action, and not objectionable as multifarious. *Hosiery Mill v. Hosiery Mill,* 198 N. C., 596.

The Investment Company is a party defendant and as it is insolvent it is properly represented by a receiver. Judgment

Affirmed.