ACE CHEMICAL CORPORATION, Plaintiff v. DSI TRANSPORTS, INC., Defendant

No. 9326SC557

(Filed 21 June 1994)

1. **Negligence § 132 (NCI4th)— delivery of contaminated tanker—contributory negligence**

The trial court erred by granting plaintiff's motion for judgment notwithstanding the verdict and awarding plaintiff damages where plaintiff's president had ordered from defendant trucking company a stainless steel tanker truck to transport a corrosive cleaning compound; defendant's dispatcher called back and asked if the compound had to be in an insulated trailer; plaintiff's president responded that any kind of trailer that was clean would suffice; defendant sent an uninsulated aluminum tanker; plaintiff's employees checked the tanker to see if it was clean and loaded the compound without ascertaining that it was the proper type of tanker; the customer's employees discovered that the chemical was tainted and rejected the shipment; defendant's employees tried to filter the compound; and defendant's employees discovered during the filtering process that the compound had dissolved a gasket on a valve and spilled onto the ground. There is more than a scintilla of evidence supporting the jury's verdict that plaintiff was contributorily negligent.

**Am Jur 2d, Negligence §§ 1096 et seq.**

2. **Contracts § 148 (NCI4th)— provision of tanker truck for shipping chemicals—contamination—existence of contract—breach of contract—directed verdict**

The trial court erred by granting plaintiff's motion for a directed verdict on a breach of contract claim where plaintiff ordered a tanker truck from defendant for shipment of a cleaning compound and plaintiff's customer rejected the shipment

because the compound was contaminated. Defendant's pleadings and defendant's own order form establish that plaintiff contracted with defendant and defendant agreed to provide plaintiff a stainless steel tanker truck to deliver the cleaning compound, but, viewing the evidence in the light most favorable to plaintiff, an issue of fact exists as to whether defendant breached that contract in that plaintiff's own chemical expert testified that there was no problem in storing the compound in aluminum containers for two or three days and the compound was in defendant's tanker for less than 24 hours, and the employee of plaintiff who loaded the compound testified that the tanker looked clean to him when he visually inspected the tanker prior to loading.

**Am Jur 2d, Contracts §§ 626 et seq.**

3. **Election of Remedies § 3 (NCI4th)— contaminated tanker truck—tort and contract claims—motion for election of remedies—improperly granted before verdict**

   The trial court erred by requiring plaintiff to choose its remedy before submitting the case to the jury in an action involving a contaminated tanker truck in which plaintiff brought both contract and negligence claims. When a complaint alleges a cause in contract and a cause in tort and both causes arise out of the same transaction or occurrence, a defendant's motion to require an election is properly refused. The more recent trend has been to allow an election of remedies after return of the jury verdict.

   **Am Jur 2d, Election of Remedies § 35.**

4. **Unfair Competition or Trade Practices § 39 (NCI4th)— contaminated tanker truck—unfair trade practice—summary judgment for defendant**

   The trial court properly granted summary judgment for defendant on an unfair practices claim which arose from contamination of plaintiff's cleaning compound in defendant's tanker truck. A plaintiff must show substantial aggravating circumstances attending a breach of contract to recover under N.C.G.S. § 75-1.1, but plaintiff did not allege or present evidence of any substantial aggravating circumstances surrounding defendant's breach of contract. Although plaintiff argued in its brief that defendant owed plaintiff the highest duty of care as a common carrier, plaintiff did not allege that defendant was a common car-

ACE CHEMICAL CORP. v. DSI TRANSPORTS, INC.

[115 N.C. App. 237 (1994)]

rier in its complaint or present any evidence at the hearing that defendant was a common carrier.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

Appeal by defendant from judgment entered 15 December 1992 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 March 1994.

On 18 August 1990, plaintiff filed suit alleging negligence, breach of contract and unfair and deceptive practices in violation of G.S. 75-1.1. Plaintiff alleged that defendant furnished plaintiff a "contaminated" tanker that was unsuitable for delivering plaintiff's chemical product and that plaintiff suffered damages when defendant's tanker leaked plaintiff's product onto the ground at plaintiff's facility. Defendant counterclaimed for damages to its tanker and alleged that plaintiff's chemical destroyed the valves on its tanker. On 20 August 1992, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's unfair and deceptive practices claim.

The case was tried before a jury on plaintiff's breach of contract and negligence claims. The evidence at trial tended to show the following: On 7 June 1990, plaintiff's president, Robert J. Clein, placed an order by telephone with defendant trucking company for a stainless steel tanker truck to transport a corrosive cleaning compound called Hampene 100 from plaintiff's facility in Charlotte, North Carolina, to plaintiff's customer, Kay Chemical Company (hereinafter Kay Chemical) in Greensboro, North Carolina. The shipment of Hampene 100 was to be loaded at plaintiff's facility on 12 June 1990 and delivered to Kay Chemical on 13 June 1990. In the year preceding 12 June 1990, defendant's tankers had been used to deliver plaintiff's Hampene 100 to Kay Chemical approximately fourteen times.

On 12 June 1990 at 9:56 a.m., defendant's dispatcher, Scott Willman, called Clein and asked him if the "Hampene 100 [had] to be on an **insulated** trailer." Clein responded that "any kind of trailer . . . that was clean" would suffice. Pursuant to that conversation, Willman sent an uninsulated **aluminum** tanker to plaintiff's facility instead of the insulated stainless steel tanker that plaintiff originally ordered. Material Safety Data Sheets (MSDS) for Hampene 100 provide that only stainless steel, polyethylene or plastic-lined containers should be used for the handling and storage of Hampene 100.

ACE CHEMICAL CORP. v. DSI TRANSPORTS, INC.

[115 N.C. App. 237 (1994)]

At 2:15 p.m. on 12 June 1990, defendant's uninsulated aluminum tanker truck arrived at plaintiff's facility in Charlotte. Plaintiff's employees checked the inside of the tanker to see if it was clean and then loaded the Hampene 100. The loaded tanker was driven to defendant's terminal in Rock Hill, South Carolina, and stored overnight. At approximately 8:00 a.m. on Wednesday 13 June, defendant's driver, Delmar Blake, drove the loaded tanker to Kay Chemical's facility in Greensboro and arrived at approximately 10:00 a.m. After inspecting the Hampene 100, Kay Chemical's employees discovered that the chemical was tainted and rejected the shipment. Blake then drove the loaded tanker back to plaintiff's facility in Charlotte.

On Thursday 14 June, Blake returned to plaintiff's facility with another tanker and tried to filter the Hampene 100 while transferring it from the original tanker to the new tanker. Blake continued to try to filter the product for several hours on Friday, 15 June and on Saturday, 16 June but was unable to do so. On Tuesday 19 June, another of defendant's drivers, Billy Hinson, came to plaintiff's facility to continue the filtering operation. Hinson discovered that the Hampene 100 had dissolved a gasket on a valve near the rear of the vehicle and had spilled onto the ground. Hinson told plaintiff's employees that the chemical had leaked and returned to defendant's terminal in South Carolina.

At the close of all the evidence, the trial court required plaintiff to elect which theory it would submit to the jury, negligence or breach of contract. Plaintiff chose the negligence theory. Both plaintiff and defendant also moved for directed verdict as to plaintiff's negligence claim and defendant's counterclaim. The trial court denied defendant's motion for directed verdict but took plaintiff's motion for directed verdict under advisement.

The trial court submitted the issues of defendant's negligence and plaintiff's contributory negligence to the jury. On 18 September 1992, the jury returned a verdict finding defendant negligent and plaintiff contributorily negligent. On 25 September 1992, plaintiff moved for judgment notwithstanding the verdict on the issue of plaintiff's contributory negligence and for directed verdict on plaintiff's breach of contract claim. Plaintiff also filed a motion for a new trial in the alternative. On 15 December 1992, the trial court granted plaintiff's motion for judgment notwithstanding the verdict and directed verdict. From judgment entered for plaintiff in the amount

of $16,480.60, defendant appeals. Plaintiff cross appeals the trial court's order granting defendant's motion for summary judgment on plaintiff's unfair and deceptive practices claim.

> *Waggoner, Hamrick, Hasty, Monteith and Kratt, by S. Dean Hamrick, for plaintiff-appellee.*

> *Golding, Meekins, Holden, Cosper & Stiles, by Lawrence W. Jones, for defendant-appellant.*

EAGLES, Judge.

Defendant appeals from the trial court's judgment granting plaintiff's motion for judgment notwithstanding the verdict and directed verdict. Plaintiff cross appeals the trial court's order granting defendant's motion for summary judgment on plaintiff's unfair and deceptive practices claim. After careful review of the record and briefs, we reverse the trial court's judgment granting plaintiff's motion for judgment notwithstanding the verdict on the issue of plaintiff's contributory negligence and remand to the trial court to enter judgment in accordance with the jury's verdict. We also reverse the trial court's judgment granting plaintiff's motion for directed verdict on plaintiff's breach of contract claim and remand to the trial court for a new trial on that issue. Finally, we affirm the trial court's order granting defendant's motion for summary judgment on plaintiff's unfair and deceptive practices claim.

### I. DEFENDANT'S APPEAL

#### A.

[1] Defendant contends that the trial court erred in granting plaintiff's motion for judgment notwithstanding the verdict on the issue of plaintiff's contributory negligence. We agree. ·

A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). Like a motion for directed verdict, a motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence to take the case to the jury. *Taylor v. Walker*, 84 N.C. App. 507, 509, 353 S.E.2d 239, *rev'd on other grounds*, 320 N.C. 729, 360 S.E.2d 796 (1987). The motion for judgment notwithstanding the verdict "shall be granted if it appears that the motion for directed verdict could properly have been granted." G.S. 1A-1, Rule 50(b). Accordingly, the test for determining the sufficiency of the evidence is the same under

ACE CHEMICAL CORP. v. DSI TRANSPORTS, INC.

[115 N.C. App. 237 (1994)]

both motions. *Dickinson v. Pake*, 284 N.C. 576, 584, 201 S.E.2d 897, 903 (1974).

In considering a motion for judgment notwithstanding the verdict, all the evidence must be considered in the light most favorable to the nonmoving party. *Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986). The nonmovant is given the benefit of every reasonable inference that may legitimately be drawn from the evidence and all contradictions are resolved in the nonmovant's favor. *Id.* If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict and any subsequent motion for judgment notwithstanding the verdict should be denied. *Broyhill v. Coppage*, 79 N.C. App. 221, 226, 339 S.E.2d 32, 36 (1986); *Abels v. Renfro Corp.*, 335 N.C. 209, 215, 436 S.E.2d 822, 825 (1993).

Defendant contends that there was sufficient evidence of plaintiff's contributory negligence to support the jury's verdict. We agree. First, defendant's dispatcher, Scott Willman, testified that he telephoned plaintiff's president, Mr. Clein, on the day defendant's tanker was to be delivered to plaintiff's facility in Charlotte and asked him if the "Hampene 100 [had] to be on an insulated trailer." Willman testified that Clein answered, "[N]o, just any kind of trailer that [defendant] had available . . . that was clean was fine with him." Clein testified, however, that he knew that Hampene 100 could not be transported in "just **any** kind of trailer . . . that was clean." Clein testified that he knew that the MSDS sheets for Hampene 100 provided that only stainless steel, polyethylene, or plastic-lined containers should be used for the handling and storage of Hampene 100. A reasonable juror could conclude that Clein was negligent in not clearly specifying to Willman the type of trailer that would be suitable to transport the Hampene 100. Similarly, a reasonable juror could conclude that Clein was negligent in responding to Willman that "just any kind of trailer . . . that was clean was fine" and that Clein should have clearly specified to Willman the type of trailer that would be suitable to transport the Hampene 100.

Second, plaintiff's employee, Matthew L. Doggett, loaded the Hampene 100 into defendant's tanker without ascertaining whether it was the proper type of tanker for shipping Hampene 100. Doggett testified that he loaded the Hampene 100 into defendant's tanker on 12 June 1990 and that he checked defendant's tanker to make sure that it was clean. Doggett also testified, however, that as far as he was

ACE CHEMICAL CORP. v. DSI TRANSPORTS, INC.

[115 N.C. App. 237 (1994)]

concerned on 12 June 1990, his only duty was to make sure defendant's tanker was clean and that it was not his responsibility to determine whether defendant's tanker was an aluminum or stainless steel tanker. Doggett testified that he had no knowledge prior to 12 June 1990 that Hampene 100 could not be shipped in an aluminum tanker and that neither his supervisor, nor Mr. Clein, nor any other employee at plaintiff's facility told him to check and make sure that each shipment of Hampene 100 was loaded into a stainless steel tanker.

Finally, plaintiff's bill of lading, (Plaintiff's Exhibit 3) prepared by plaintiff and given to defendant's driver, states that "This certifies the above named materials and products, . . . are properly classified, described, packaged, marked and labeled and in proper condition for transportation according to the applicable regulations of the Department of Transportation." The signature line below this statement was not signed by any of plaintiff's employees. A reasonable juror could infer from this evidence that none of plaintiff's employees checked to see if defendant's tanker was a proper tanker for shipping Hampene 100. In fact, defendant's attorney attempted to make this inference in his cross-examination of plaintiff's president, Mr. Clein.

Q. [I]s not this form prepared by [plaintiff]?

A. Yes.

Q. There is a signature line for an [] employee [of plaintiff]?

A. That's correct.

Q. And it certifies that it has been properly contained for shipment, is that correct?

A. Right.

Q. And no one signed it, isn't that right?

A. That's correct.

Q. So presumably no one bothered to check, is that right?

A. I don't say that. I just say that it wasn't signed. I'm not going to go into details as to why it wasn't signed.

We conclude that there is more than a scintilla of evidence here supporting the jury's verdict that plaintiff was contributorily negligent. Accordingly, we reverse the judgment of the trial court granting plaintiff's motion for judgment notwithstanding the verdict and

awarding plaintiff damages in the amount of $16,480.60 and remand to the trial court to enter judgment on the jury's verdict.

## B.

**[2]** Defendant also contends that the trial court erred in granting plaintiff's motion for directed verdict on plaintiff's breach of contract claim. We agree.

A directed verdict should never be granted when there is conflicting evidence on contested issues of fact. *Northern Nat'l Life Ins. Co. v. Lacy J. Miller Mach. Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). Defendant first contends that the evidence at trial did not establish the existence of a contractual agreement in which plaintiff specified the type of tanker needed to transport the Hampene 100. Defendant argues that there was no written contract between plaintiff and defendant detailing how the Hampene 100 should be shipped and that defendant was under no contractual obligation to provide plaintiff with a stainless steel tanker to deliver plaintiff's Hampene 100. We disagree.

Defendant admitted in its answer that on or about 12 June 1990, "plaintiff requested from defendant a tanker truck for the purpose of transporting a chemical or related products from plaintiff's place of business in Charlotte, North Carolina, to Kay Chemical Company in Greensboro, N.C." Plaintiff's Exhibit 2 is the order form on which defendant's employee reduced plaintiff's telephone order to writing. Defendant's order form reads in pertinent part as follows:

> Ship from Ace Chemical Company, Charlotte, North Carolina. Ship to Kay Chemical, Greensboro, North Carolina. Product 40,000 pounds Hampene 100 cleaning compound. . . . Loading time and date June 12, 1990, 2:00 p.m. Delivery time and date June 13, 1990, 10:00 a.m. . . . [T]ype of equipment, 23.

Clein testified that he learned from the deposition of defendant's dispatcher, Scott Willman, that the number 23 designation beside type of equipment meant stainless steel insulated tanker. Defendant does not deny the authenticity or correctness of its order form. "Where the [movant's] controlling evidence is documentary and [the] nonmovant does not deny the authenticity or correctness of the documents," the credibility of the evidence is manifest as a matter of law. *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 537, 256 S.E.2d 388, 396 (1979). Accordingly, defendant's pleadings and defendant's own order form (Plaintiff's Exhibit 2) establish that plaintiff con-

tracted with defendant and defendant agreed to provide plaintiff a stainless steel tanker truck at plaintiff's facility in Charlotte on 12 June 1990 to deliver a load of Hampene 100 to Greensboro, North Carolina.

Plaintiff is not entitled to a directed verdict, however, because we conclude that an issue of fact exists as to whether defendant breached its contract with plaintiff. We reemphasize that in passing upon a motion for directed verdict, we must resolve all conflicts in the evidence in the nonmovant's favor and give the nonmovant the benefit of every reasonable inference. *Broyhill v. Coppage*, 79 N.C. App. 221, 226, 339 S.E.2d 32, 36 (1986).

Plaintiff alleges that defendant breached its contract with plaintiff by furnishing plaintiff a "contaminated and improper type" of tanker. Plaintiff contends that defendant's tanker had rust in it which contaminated plaintiff's chemical and that plaintiff's chemical leaked from defendant's tanker because defendant sent an aluminum tanker instead of a stainless steal tanker. The uncontroverted evidence shows that defendant sent plaintiff an aluminum tanker instead of the stainless steal tanker originally ordered and that the MSDS sheets for Hampene 100 indicate that Hampene 100 should only be stored in stainless steal, polyethylene or plastic-lined containers. Plaintiff contends that this evidence proves that defendant breached the contract as a matter of law. We disagree. We conclude that the following evidence raises a question of fact as to whether defendant breached the contract.

First, although the MSDS sheets for Hampene 100 state that only stainless steel containers should be used to store Hampene 100, plaintiff's own chemical expert, Mr. John Ravel, testified that there was no problem in storing Hampene 100 in aluminum containers for "periods of short duration, meaning two to three days." By the time Kay Chemical rejected the delivery, the Hampene 100 had been stored in defendant's tanker for less than 24 hours. The Hampene 100 was loaded into defendant's tanker at 2:00 p.m. on 12 June and delivered to Kay Chemical at 10:00 a.m. on 13 June. Viewing this evidence in the light most favorable to defendant, a reasonable juror could conclude that plaintiff's chemical was not contaminated by the aluminum in defendant's tanker from the time it was stored in defendant's tanker until delivery.

Second, although plaintiff contends that defendant's tanker was dirty and contaminated with rust when it arrived at plaintiff's facility,

plaintiff's employee who loaded the Hampene 100 into defendant's tanker, Mr. Matthew Doggett, testified that the inside of defendant's tanker looked clean to him when he visually inspected the tanker prior to loading the Hampene 100. Viewing this evidence in the light most favorable to defendant, a reasonable juror could conclude that plaintiff's chemical was contaminated before it was loaded into defendant's tanker. "If there is conflicting testimony that permits different inferences, one of which is favorable to the nonmoving party, a directed verdict in favor of the party with the burden of proof is improper." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 662, 370 S.E.2d 375, 387 (1988). Accordingly, the trial court erred in granting plaintiff's motion for directed verdict on plaintiff's breach of contract claim.

[3] Plaintiff cross assigns error and contends that the trial court erred in requiring plaintiff to elect between its negligence and breach of contract claims prior to submitting the case to the jury. We agree and remand for a new trial on plaintiff's breach of contract claim.

At the close of all the evidence, the trial court required plaintiff to elect which theory it would submit to the jury, negligence or breach of contract. Plaintiff chose to submit the issue of negligence. Accordingly, the jury was not instructed on breach of contract and did not decide that issue.

Defendant cites *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 79 S.E.2d 880 (1954), as precedent for the trial court's action in requiring plaintiff to elect between its tort and contract remedies prior to submission before the jury. In *Smith, supra,* the trial court, at the close of the plaintiff's evidence, required the plaintiff to elect what cause of action he relied upon in seeking damages, breach of contract or negligence. The plaintiff selected negligence. In holding that plaintiff's evidence for negligence was not sufficient to go the jury, the Court stated that "Where he has two remedies, he may choose between them and select that one which he deems the best for him; but he must abide the [sic] result of his choice." *Id.* at 369, 79 S.E.2d at 885. We conclude that *Smith* does not control here because the question of whether the trial court properly required the plaintiff to make an election between his two remedies was not squarely before the *Smith* Court and was not directly addressed. The *Smith* Court assumed the propriety of the trial court requiring an election and held that once a party makes its election of remedies, the electing party is bound.

ACE CHEMICAL CORP. v. DSI TRANSPORTS, INC.

[115 N.C. App. 237 (1994)]

When a complaint alleges a cause in contract and a cause in tort and both causes arise out of the same transaction or occurrence, a defendant's motion to require an election is properly refused. *Craven County v. Investment Co.*, 201 N.C. 523, 160 S.E. 753 (1931). In *Craven County v. Investment Co., supra,* our Supreme Court held that the trial court properly refused defendants' motion to require plaintiff to make an election between his remedies when his complaint set out causes of action in both contract and tort. The Court stated that the elements of contract and tort in the plaintiff's complaint were so closely related that the defendants' right to require an election was precluded. *Id.* at 530, 160 S.E. at 756. We also note that the more recent trend has been to allow an election of remedies after return of the jury verdict. *Cf. Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 344 S.E.2d 297, *disc. rev. denied,* 318 N.C. 283, 347 S.E.2d 464 (1986) (plaintiff should be allowed to elect remedy between punitive damages or treble damages under G.S. 75-1.1 after the jury's verdict). Accordingly, we conclude that the trial court erred in requiring plaintiff to elect between its choice of remedies prior to submitting the case before the jury. We remand the case to the trial court for a new trial on plaintiff's breach of contract claim.

II. PLAINTIFF'S APPEAL

[4] Plaintiff contends in its appeal that the trial court erred in granting summary judgment in favor of defendant on plaintiff's unfair and deceptive practices claim. We disagree.

Under G.S. 75-1.1, an act or practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981); *Barbee v. Atlantic Marine Sales and Serv.*, 113 N.C. App. 80, 84, 437 S.E.2d 682, 685 (1993). An act or practice is deceptive if it "has the capacity or tendency to deceive." *Marshall, supra,* at 548, 276 S.E.2d at 403. A mere breach of contract, even if intentional, is not an unfair or deceptive act under G.S. 75-1.1. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989); *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (1990). "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act." *Bartolomeo* at 535.

Summary judgment is properly granted when all the evidence before the court at the time the motion is ruled on shows that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *Dumouchelle v. Duke Univ.*, 69 N.C.

App. 471, 473, 317 S.E.2d 100, 102 (1984). Here, plaintiff does not allege or present evidence of any substantial aggravating circumstances surrounding defendant's breach of contract. Plaintiff's complaint does not allege any aggravating circumstances. When plaintiff was asked in an interrogatory to "state, with particularity, all facts upon which Plaintiff bases its claim against Defendant for unfair and deceptive trade practices," plaintiff answered:

> Plaintiff contends that evidence discloses that Defendant had on numerous previous occasions supplied Plaintiff with stainless steel tanker trucks to transport the Hampene 100 such as was required for the shipment referred to in the Complaint. Defendant's supplied Plaintiff an aluminum tanker which was unfit to transport the Hampene 100 and which obviously had rust in it which in turn made Plaintiff's product worthless and caused it to be rejected by Plaintiff's customer. Despite the obvious liability of Defendant for the damages sustained by Plaintiff, Defendant has failed to pay the damages and has chosen to defend this claim. Plaintiff contends under these circumstances Defendant is engaging in unfair and deceptive business practices. . . .

We conclude that these facts do not present aggravating circumstances surrounding defendant's breach of contract and are insufficient as a matter of law to raise a claim of unfair and deceptive practices pursuant to G.S. 75-1.1.

Plaintiff argues extensively in its brief that defendant is a common carrier and that as a common carrier defendant owed plaintiff the highest duty of care. However, plaintiff did not allege that defendant was a common carrier in its complaint, nor did plaintiff present any evidence at the hearing that defendant was a common carrier. Accordingly, we conclude that the trial court did not err in granting defendant's motion for summary judgment on plaintiff's unfair and deceptive practices claim.

### III.

In sum, we conclude that the trial court erred in granting plaintiff's motion for judgment notwithstanding the verdict and remand to the trial court to enter judgment on the jury's verdict on the issue of plaintiff's contributory negligence. We also conclude that the trial court erred in granting plaintiff's motion for directed verdict on plaintiff's breach of contract claim and in requiring plaintiff to elect between its negligence and breach of contract claims prior to sub-

mitting the case to the jury. Accordingly, we remand to the trial court for a new trial on plaintiff's breach of contract claim. Finally, we affirm the trial court's order granting defendant's motion for summary judgment on plaintiff's unfair and deceptive practices claim. This case is remanded for a new trial on the breach of contract claim and for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

Judges MARTIN and McCRODDEN concur.