NORMAN OWEN TRUCKING, INC. PLAINTIFF v. J. A. MORKOSKI AND ALLEN RESEARCH ASSOCIATES, INC., DEFENDANTS

No. COA97-561

(Filed 20 October 1998)

1. **Fraud— fraudulent conveyance—salary paid to corporation president—insufficient cash on hand for creditors— voluntariness**

The trial court erred by failing to grant defendant-Morkoski's JNOV motion on the issue of fraudulent conveyance in an action arising from defendant-Research issuing checks to Morkoski, its president, as a salary draw even though Research could not pay for trucking services provided by plaintiff. A fraudulent conveyance must be voluntary, or not for value, and plaintiff presented no evidence as to the value, or lack thereof, of the services rendered by Morkoski in return for the sums advanced.

NORMAN OWEN TRUCKING v. MORKOSKI

[131 N.C. App. 168 (1998)]

## 2. Fraud— fraudulent conveyance—salary paid to corporation president—insufficient cash on hand for creditors—intent

The trial court erred by failing to grant defendant-Morkoski's JNOV motion on the issue of fraudulent conveyance in an action arising from defendant-Research issuing checks to Morkoski, its president, as a salary draw even though Research could not pay for trucking services provided by plaintiff. An intent to defraud creditors must be shown and, while plaintiff contends that intent is shown by the lack of adequate funds to pay all creditors and the circumstance that Morkoski, as a director and president of Research, prepared, signed and cashed the checks, the evidence was that the enterprise had favorable prospects and was engaged in the normal course of business, although experiencing cash flow difficulty. The Court of Appeals would not establish a rule that a corporation, even closely held, may not make regular salary payments if faced with debt in excess of cash on hand. Moreover, the total paid to Morkoski amounted to his maximum salary in only two of the seven months at issue and plaintiff offered no evidence as to the timing of services rendered by Morkoski in relation to the dates of the checks.

## 3. Unfair Trade Practices— salary paid to corporation president—insufficient cash to pay creditors—not deceptive or oppressive

The trial court erred by failing to grant defendant-Morkoski's JNOV motion on the issue of unfair trade practices in an action arising from defendant-Research issuing checks to Morkoski, its president, as a salary draw even though Research could not pay for trucking services provided by plaintiff. It cannot be said that Morkoski's actions may properly be characterized as the deceptive or oppressive conduct required by the statute.

## 4. Unjust Enrichment— payment of salary to corporation president—insufficient cash to pay creditors

The trial court erred by failing to grant defendant-Morkoski's JNOV motion on the issue of unjust enrichment in an action arising from defendant-Research issuing checks to Morkoski, its president, as a salary draw even though Research could not pay for trucking services provided by plaintiff. There was no evidence of a direct receipt by Morkoski of any benefit in consequence of plaintiff's performance of its contract with defendant

Research, nor any evidence that Morkoski consciously accepted that benefit.

Appeal by defendants from judgment filed 14 October 1996 and order filed 11 December 1996 by Judge Robert S. Cilley in Henderson County District Court. Heard in the Court of Appeals 4 December 1997.

*E.K. Morley, for plaintiff-appellee.*

*Prince, Youngblood & Massagee, by Sharon B. Alexander, for defendant-appellant.*

JOHN, Judge.

Defendant J.A. Morkoski (Morkoski) appeals the trial court's judgment awarding damages to plaintiff Norman Owen Trucking, Inc., on the latter's claims of fraudulent conveyance, unfair and deceptive trade practices and unjust enrichment. Morkoski contends the trial court erred by denying his motions for directed verdict and judgment notwithstanding the verdict (JNOV) as to each claim, and further assigns as error the trial court's determination that his conduct violated N.C.G.S. § 75-1.1 (1994). For the reasons set forth below, we reverse the trial court and remand this case with direction that JNOV be entered in favor of Morkoski.

Plaintiff filed suit 23 March 1993 against Morkoski and Allen Research Associates, Inc. (Research), alleging (1) certain checks issued to Morkoski by Research constituted fraudulent conveyances, (2) Morkoski and Research engaged in unfair or deceptive acts or practices in violation of G.S. § 75-1.1 and (3) "Morkoski has been personally unjustly enriched."

At jury trial commenced 10 October 1996, the evidence tended to show the following: In 1991, Morkoski and several other individuals began a new enterprise through Research, an existing corporation. Morkoski was a director, shareholder and president of Research. The new undertaking involved shredding scrap tires and utilizing the resulting rubber chips in manufacturing mats installed to protect nylon landfill liners. Morkoski and one other person supervised hourly workers and production of the mats, and Morkoski was to receive $3500.00 per month for his services.

Jack Webb (Webb), vice-president of finance for Research, testified that by 1992 the group "had expectations of a very good busi-

ness." However, despite approaching several potential lenders, Research "simply could not borrow the money to buy the shredding equipment necessary to grind up the tires," and therefore entered into a contract with a South Carolina company which had the required machinery.

Between 30 March 1992 and 13 May 1992, Research hired plaintiff to haul tires to the South Carolina location, and conceded "plaintiff provided $4,250.00 worth of trucking services" to Research. Norman Owen (Owen), president and owner of plaintiff, set the figure at $5,250.00, less a 6 May 1992 payment of $1,250.00. An invoice dated 25 May 1992 indicated plaintiff had sent billing statements to Research on 15 April 1992 and 1 May 1992.

During the period between 10 January and 1 July 1992, Research issued seventeen checks (the checks) payable to Morkoski and designated as being for salary "draw." The checks totaled $15,250 as follows: January—$2950.00, February—$600.00, March—$3500.00, April—$0.00, May—$5500.00, June—$2300.00, and July—$400.00. Morkoski, who personally signed the checks, acknowledged he had no written contract with Research and that the checks were not expressly authorized in advance by the Board of Directors of Research. According to Webb, the checks represented payments towards Morkoski's monthly salary of $3500.00, which amount had been agreed upon by the Board of Directors of Research.

As part of discovery, Morkoski and Research responded affirmatively to the following requests of plaintiff for admissions:

17. That at the time that the $4,500.00 payment was made to the individual defendant, the corporate defendant did not have funds adequate to pay all of its creditors.

18. That at the time that the $11,100.00 payment was made to the individual defendant, the corporate defendant did not have funds adequate to pay all of its creditors.

19. That at no time subsequent to making the $4,500.00 payment to the individual defendant has the corporate defendant had funds adequate to pay all of its creditors.

By consent judgment entered 10 April 1992, Research was held liable to an equipment supplier in the amount of $76,542.83 plus court costs and interest, although Webb testified the judgment was subse-

quently satisfied. As of 30 June 1992, the "Statement of Income and Retained Earnings" of Research reflected a loss of $278,154.00.

The arrangement with the South Carolina facility became unworkable for several reasons and, lacking the ability to grind accumulated tires, the enterprise ultimately failed. No evidence was introduced tending to show the actual date thereof.

Plaintiff relied at trial upon the testimony of Owens and the admissions received during discovery. At the close of the evidence, the trial court denied the motion of Morkoski and Research for directed verdict. The jury found for plaintiff on all issues, awarding $5,871.33 in damages. The trial court subsequently concluded the conduct of "both defendants" violated G.S. § 75-1.1 and trebled the damages awarded by the jury. From this judgment awarding plaintiff $17,613.99, counsel fees and costs, as well the trial court's order denying defendant's subsequent JNOV motion, Morkoski filed timely notice of appeal.

Morkoski first argues the trial court erred by denying his motions for directed verdict and JNOV. As the effect of a JNOV motion is simply that judgment be entered in accordance with an earlier directed verdict motion, the same standard is applied in reviewing both motions, *Smith v. Childs*, 112 N.C. App. 672, 682, 437 S.E.2d 500, 507 (1993), and we speak only to the trial court's later ruling.

In deciding a JNOV motion, the trial court must determine whether the evidence in the light most favorable to the non-moving party is sufficient to take the case to the jury. *Freese v. Smith*, 110 N.C. App. 28, 33, 428 S.E.2d 841, 845 (1993). The motion should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim. *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 242, 446 S.E.2d 100, 103 (1994).

### I. Fraudulent Conveyances

[1] At the outset, we observe that the case *sub judice* involves the transfer of funds as opposed to the transfer of real property more typically seen in fraudulent conveyance cases. In any event, plaintiff and Morkoski each cite *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914) as the leading North Carolina case on the subject.

*Aman* summarizes the applicable fraudulent conveyance principles as follows:

(1) If the conveyance is voluntary, and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid.

(2) If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.

(3) If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained.

(4) If the conveyance is upon a valuable consideration *and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee* and of which intent he had no notice, it is valid.

(5) If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the *grantor*, participated in by the *grantee* or of which he he [sic] has notice, it is void.

*Id.* at 227, 81 S.E. at 164 (emphasis in original); *see also* N.C.G.S. § 39-23.4 (Conveyances with intent to defraud creditors void), and § 39-23.5 (Voluntary conveyance evidence of fraud as to existing creditors) (1997).

Plaintiff contends the checks were void under each of the five principles enunciated in *Aman*. Morkoski responds that plaintiff failed to present the requisite scintilla of evidence that the checks were voluntary as defined in *Aman* and further failed to show fraudulent intent existed with Morkoski's knowledge. We agree.

In view of the admission that Research lacked adequate funds to satisfy "all of its creditors" at the time the checks were issued, we do not consider the first principle of the *Aman* analysis, but rather proceed to the second and third. To sustain a claim under these princi-

ples, transfer of the property in question must have been voluntary. *Kirkhart v. Saieed*, 107 N.C. App. 293, 295, 419 S.E.2d 580, 581 (1992). This Court has described a conveyance as voluntary

> when it is not for value, *i.e.*, when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud.

*Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 128, 252 S.E.2d 826, 832 (1979).

In the instant case, the evidence was uncontradicted that the "agreed pay" of Morkoski was $3500.00 per month, and that the checks represented payments towards that amount. The record further reflects that during the first six months of 1992, Morkoski was "either at the office or involved in Allen Research activities traveling, essentially five days a week."

Plaintiff presented no evidence as to the value, or lack thereof, of the services rendered by Morkoski in return for the sums advanced by Research. Neither the admissions received in discovery nor the testimony of Owen addressed whether Research had paid a "reasonably fair price" for Morkoski's services. *See id.* In the absence of a scintilla of evidence tending to show the payments represented by the checks were voluntary or "not for value," *see id.*, the conveyances thereby effected cannot be subject to characterization as void under principles (2) and (3) of *Aman*. *See Aman*, 165 N.C. at 227, 81 S.E. at 164.

[2] Principles (4) and (5) of *Aman* mandate evidence of intent to defraud creditors. *Kirkhart*, 107 N.C. App. at 296, 419 S.E.2d at 581. At a minimum, "actual intent to defraud creditors" on the part of the grantor must be shown. *Aman*, 165 N.C. at 227, 81 S.E. at 164. Morkoski argues plaintiff "offered absolutely no evidence" tending to show such intent.

Plaintiff in essence responds that the combination of the discovery admission that Research lacked adequate funds to pay all creditors at the time of issuance of the checks to Morkoski with the circumstance that Morkoski, as a director and president of Research, prepared, signed and cashed the checks, sufficiently demonstrated intent to defraud. However, a careful review of the record, even viewed in the light most favorable to plaintiff, *see Freese*, 110 N.C. App. at 33, 428 S.E.2d at 845, reveals plaintiff's contention to be unavailing.

First, while Morkoski admitted Research did not have sufficient funds on hand to pay all creditors at the time of issuance of the checks, this not uncommon business occurrence is far different and clearly distinguishable from the insolvency and dissolution of companies in the cases cited by plaintiff. *See Bassett v. Cooperage Co.*, 188 N.C. 511, 512, 125 S.E. 14, 14 (1924) (sale of entire property of insolvent company "with a view of going out of business amounted practically to a dissolution"); *Underwood v. Stafford*, 270 N.C. 700, 704, 155 S.E.2d 211, 214 (1967) ("insolvent and inactive" corporation); *McIver v. Hardware Co.*, 144 N.C. 478, 482-83, 57 S.E. 169, 171 (1907) (sale of "practically the entire property" of insolvent company); and *Graham v. Carr*, 130 N.C. 271, 272, 41 S.E. 379, 380 (1902) (corporation insolvent and its operations "shut down").

The uncontradicted evidence in the case *sub judice* was to the effect that all individuals connected with the enterprise anticipated great success in the relevant 1992 time period, that the company was being paid to pick up used tires and was selling its product, and that commission sales in the amount of $598,950.00 were expected from a single project in addition to a sale of product which would have grossed over $400,000.00. In short, the evidence was that the enterprise had favorable prospects and was engaged in the normal course of business, although experiencing cash flow difficulty.

The instant case is akin to that of *Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 455 S.E.2d 896, *disc. review denied*, 340 N.C. 363, 458 S.E.2d 197 (1995), in which plaintiffs sought to set aside corporate deferred compensation payments to the defendant's owners and directors in excess of $1,400,000.00, allegedly advanced at a time when the defendant corporation was insolvent. *Id.* at 525, 455 S.E.2d at 898. Plaintiffs "base[d] their claim on the fact that the [defendant's] audited balance sheets [for the relevant time period] reflect[ed] liabilities in excess of assets and negative stockholders' equity." *Id.* at 526, 455 S.E.2d at 899. In affirming summary judgment on plaintiffs' breach of fiduciary duty claim (analogous to the instant fraudulent conveyance claim) in favor of the owners and directors, this Court observed that more than "balance sheet insolvency," *id.* at 527, 455 S.E.2d at 899, is required, explaining in the words of a leading treatise that

"a corporation is not insolvent, as a general rule, merely because it is embarrassed and cannot pay its debts as they become due, or because its assets, if sold, would not bring enough to pay all

its liabilities, if it is still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so."

*Id.* at 527-28, 455 S.E.2d at 900 (quoting 15A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7472 at 273-74 (perm. ed. rev. vol. 1990). Accordingly, "the transaction at issue must occur under circumstances amounting to a "winding-up" or dissolution of the corporation." *Id.* at 528, 455 S.E.2d at 900.

Second, the evidence was uncontradicted, both through the testimony of Webb and designation of the checks as being for "draw," that the payments to Morkoski were in the nature of a draw against agreed salary. We are not prepared to establish a rule that a corporation, even closely held, may not make regular salary payments if faced with debt in excess of cash on hand. Further, actual fraudulent intent is negated by the circumstance that the total paid to Morkoski amounted to $3,500.00 or more in only two of the seven months at issue, and that payments in three of the remaining months equaled $600.00, $0.00, and $400.00 respectively. If the intent was to defraud, the full amount would appear to have been taken each month notwithstanding outstanding debt to creditors.

Finally, plaintiff offered no evidence as to the timing of services rendered by Morkoski in relation to the dates of the checks.

In sum, plaintiff's evidence was insufficient on the "voluntary" element set out in principles (2) and (3) and the "intent to defraud" element under principles (4) and (5) enunciated in *Aman, see Aman,* 165 N.C. at 227, 81 S.E. at 164, and the trial court erred in failing to grant Morkoski's JNOV motion on the issue of fraudulent conveyance. *See Ace Chemical Corp.*, 115 N.C. App. at 242, 446 S.E.2d at 103.

## II.  Unfair and Deceptive Trade Practices

[3] We next consider Morkoski's assignments of error directed at the trial court's denial of his directed verdict and JNOV motions on the issue of unfair and deceptive trade practices, and at its conclusion as a matter of law that Morkoski's conduct constituted a violation of G.S. § 75-1.1.

Chapter 75 of the North Carolina General Statues prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings. *Pleasant Valley Promenade v.*

**NORMAN OWEN TRUCKING v. MORKOSKI**

[131 N.C. App. 168 (1998)]

*Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). To prevail on a claim of unfair and deceptive trade practice, a plaintiff must show

> (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or his business.

*Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). Whether a commercial act or practice violates G.S. § 75-1.1 is a question of law. *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 691, 370 S.E.2d 267, 271 (1988). Moreover, whether an action is unfair or deceptive is dependent upon "the facts of each case and its impact on the marketplace." *Id.*

Simple breach of contract or failure to pay a debt do not qualify as unfair or deceptive acts, but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies. *Ace Chemical Corp.*, 115 N.C. App. at 247, 446 S.E.2d at 106. Suffice it to state that after careful review of the record and consideration of the impact of the conduct of Morkoski upon the marketplace, we cannot say his actions may properly be characterized as the deceptive or oppressive conduct required by the statute. *See Budd Tire Corp.*, 90 N.C. App. at 691, 370 S.E.2d at 271 (in action to collect debt owed under contract by setting aside sale of debtor's assets, transaction "is merely deemed fraudulent to provide[] . . . an equitable remedy," and evidence reflected "none of the kind of deceptive or oppressive conduct . . . which would classify [debtor's] actions as an unfair and deceptive trade practice"). Plaintiff thus failed to offer a scintilla of evidence supporting an essential element of its Chapter 75 claim, *see Ace Chemical Corp.*, 115 N.C. App. at 242, 446 S.E.2d at 103, and the trial court erred by denying Morkoski's JNOV motion on the issue of unfair and deceptive trade practices and by concluding as a matter of law that his actions violated G.S. § 75-1.1.

### III. Unjust Enrichment

**[4]** Finally, we consider Morkoski's challenge to the trial court's submission of plaintiff's unjust enrichment claim to the jury. Unjust enrichment "is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556, *reh'g denied*, 323 N.C. 370, 373 S.E.2d 540 (1988). If there is a contract between the parties, the contract governs the claim and the law will not imply a contract. *Id.*

In order to withstand Morkoski's directed verdict and JNOV motions, plaintiff was required to present evidence that a benefit was conferred upon Morkoski, that he "consciously accepted" that benefit, and that the benefit was not gratuitous. *Britt v. Britt*, 320 N.C. 573, 577, 359 S.E.2d 467, 469 (1987), *overruled on other grounds*, 323 N.C. 559, 374 S.E.2d 385 (1988). Further,

> where there is a contract between two persons for the furnishing of goods or services to a third, the latter is not liable on an implied contract simply because he has received such services or goods.

*Bryson v. Hutton*, 41 N.C. App. 575, 577, 255 S.E.2d 258, 259 (1979).

Simply put, plaintiff's evidence failed the test of *Jackson* and *Bryson*. The uncontradicted evidence in the record, presented by the testimony of Owen, was that plaintiff entered into a contract with Research to provide trucking services for the benefit of Research, and that Research admitted plaintiff provided to it "$4,250.00 worth of trucking services." However, no evidence showed the direct receipt by Morkoski of any benefit in consequence of plaintiff's performance of its contract with Research, nor showed that Morkoski "consciously accepted," *Britt*, 320 N.C. at 577, 359 S.E.2d at 469, any such benefit. *See Effler v. Pyles*, 94 N.C. App. 349, 353, 380 S.E.2d 149, 152 (1989) (summary judgment against plaintiff proper on issue of unjust enrichment where she failed to meet burden of showing "she conferred a benefit directly on" defendant wife). Accordingly, lacking a scintilla of evidence as to an essential element of plaintiff's claim, *see Ace Chemical Corp.*, 115 N.C. App. at 242, 446 S.E.2d at 103, the trial court erred by denying Morkoski's JNOV motion on the issue of unjust enrichment.

Based on the foregoing, the judgment of the trial court is reversed and the case remanded for entry of JNOV in favor of defendant Morkoski.

Reversed and remanded.

Judges MARTIN, John C. and SMITH concur.